**Allen SCHAEFFER, Plaintiff,**

v.

**CITY OF NEW YORK, et. al., Defendants.**

**No. 93 Civ. 7765 (HB).**

United States District Court, S.D. New York.

June 14, 1995.

Ronald Podolsky, New York City, for plaintiff.

Paul A. Crotty, Corp. Counsel of the City of New York by Rebecca Northey and Raymond A. Serra, Jr., Asst. Corp. Counsel, New York City, for defendants.

## OPINION AND ORDER

BAER,[1] District Judge:

Plaintiff Allen Schaeffer, a former employee of the New York City Human Resources Administration ("HRA"), sued the City of New York (the "City"), the City's Mayor, and six[2] HRA employees and administrators (collectively, "defendants") based on alleged retaliatory actions taken by defendants in response to a complaint plaintiff made to the Department of Investigations ("DOI") concerning the procedures for disciplining HRA employees. Plaintiff's first cause of action alleges violation of his First Amendment rights, arguing that his complaint to DOI constitutes protected "speech." Plaintiff's second cause of action alleges a dubious violation of the Constitution's Equal Protection Clause: plaintiff claims that in allegedly retaliating on the basis of his complaint to DOI,

defendants failed to afford plaintiff equal protection under the city's "whistleblower" policy. Plaintiff also pursues a state cause of action for unpaid wages in the amount of $2,386.10. Defendants have moved for summary judgment on plaintiff's federal claims.

I heard oral argument on this summary judgment motion on April 6, 1995. For the reasons detailed below, I grant defendants' motion for summary judgment in its entirety, and I do not exercise pendent jurisdiction over plaintiff's state claim for unpaid wages.

## I. BACKGROUND

Plaintiff worked as a supervisor in HRA's Medical Assistance Program ("MAP"). He supervised two teams of supervisors, caseworkers, and other employees who administered health care services. In September 1986, Schaeffer wrote a memorandum to James Proffit, his immediate supervisor and a defendant in this action, recommending that a certain HRA employee be charged with misconduct. Proffit's supervisor, Dennis Deering, forwarded Schaeffer's memo to the MAP personnel Director for further action. Plaintiff believed that HRA's internal procedures required Proffit instead to forward the memo directly to the director of the agency-wide HRA Employee Discipline Division, Alfred Duke. Plaintiff therefore proceeded to speak with Duke concerning the matter. Duke told plaintiff that before formally commencing disciplinary proceedings, he should speak with the supervisor he wanted to discipline in order to provide her an opportunity to tell her side of the story. Schaeffer refused to do this, claiming that HRA procedure did not require it. Schaeffer, however, admits that HRA's guidelines expressly state that it is "good supervisory practice" to speak with the employee sought to be disciplined before initiating formal disciplinary proceedings.

On October 14, 1986, plaintiff filed the DOI complaint that is the subject of this litigation. In the complaint, plaintiff argued that HRA wrongfully circumvented its own procedure

---

**1.** Carole Gottesman, a second-year student at New York Law School, assisted in the research and preparation of this opinion.

**2.** Plaintiff recently dropped his claim against one of the individual defendants, leaving a total of five former employees and administrators.

by requiring him to speak to the employee before initiating disciplinary proceedings. Plaintiff did not tell Proffit of the complaint. DOI informed plaintiff that his charges were determined to be unfounded. No further action on the matter was taken. Plaintiff claims that after making the DOI complaint, he was "subjected to retaliation and a campaign of harassment designed to keep him away from sensitive decision making and client involvement, which was designed to humiliate, denigrate and interfere with [his] career path expectations...." Compl. at 7, ¶ 4.

The only specific incidents that plaintiff has cited as retaliatory all occurred three years after the date of his DOI complaint. I find there are no triable issues of fact and defendants are entitled to judgment as a matter of law because plaintiff will be unable to establish the causation he must prove in order to prevail on his claims.

## II. STANDARD FOR SUMMARY JUDGMENT

■ Rule 56 of the Federal Rules of Civil Procedure provides for summary judgment where the evidence shows that "there is no genuine issue as to any material fact and [that] the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Summary judgment "is properly regarded ... as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 1). In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam); *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir.1987). An issue of credibility is insufficient to preclude the granting of a motion for summary judgment. Neither side can rely on conclusory allegations; instead, the disputed issues of fact must be

supported by evidence that would allow a "rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Finally, factual disputes that are irrelevant to the disposition of the suit under governing law will not preclude entry of summary judgment. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

## III. DISCUSSION

### A. First Amendment Claim

■ To succeed on his First Amendment claim, plaintiff "must demonstrate by a preponderance of the evidence that the *speech at issue was protected*, that he suffered an *adverse employment action*, and that there was a *causal connection* between the protected speech and the adverse employment action." *Blum v. Schlegel*, 18 F.3d 1005, 1010 (2d Cir.1994) (citing *Mount Healthy Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283–87, 97 S.Ct. 568, 574–76, 50 L.Ed.2d 471 (1977)) (emphases added).

### 1. Was Plaintiff's Speech Constitutionally Protected?

■ Public employee speech is constitutionally protected only when the speech is of public concern and does not merely pertain to a personal dispute that involves internal office affairs. *Ezekwo v. New York City Health & Hosps. Corp.*, 940 F.2d 775, 781 (2d Cir.), *cert. denied*, 502 U.S. 1013, 112 S.Ct. 657, 116 L.Ed.2d 749 (1991). As the Supreme Court explained in *Connick v. Myers*, 461 U.S. 138, 149, 103 S.Ct. 1684, 1691, 75 L.Ed.2d 708 (1983),

> To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark—and certainly every criticism directed at a public official—would plant the seed of a constitutional case. While as a matter of good judgment, public officials should be receptive to constructive criticism offered by their employees, the First Amendment does not require a public office to be run as a roundtable for

employee complaints over internal office affairs.

The Second Circuit, in *Ezekwo v. New York City Health & Hosps. Corp.*, 940 F.2d 775, 781 (2d Cir.), *cert. denied*, 502 U.S. 1013, 112 S.Ct. 657, 116 L.Ed.2d 749 (1991), applied the *Connick* Court's reasoning in finding that a physician's complaints asserting, among other charges, poor methods for teaching residents of a public hospital and improper facility maintenance of that hospital did not constitute matters of public concern. This was due to the fact that the doctor's

> complaints were personal in nature and generally related to her own situation within the [ ] residency program. Our review of her prolific [complaints] convinces us that [she] was not on a mission to protect the public welfare. Rather, her primary aim was to protect her own reputation and individual development as a doctor.

This Court, following *Ezekwo*, recently found that a government employee's criticism of her employer's training program was not a matter of public concern even though her criticism implied that the program wasted public funds. Holding otherwise, explained the court, would cause "every public employee's complaint about his or her work conditions" to constitute a matter of public concern in that all such complaints "indirect[ly] charge that the governmental employer is wasting money." *Harris v. Beedle*, 845 F.Supp. 1030, 1034 (S.D.N.Y.1994), *aff'd*, 35 F.3d 553 (2d Cir.1994). In *Harris*, the court noted that it is insufficient that the employee attempts, after engaging in the speech at issue, to change the context of the speech from one concerning a personal dispute relating to internal procedures into one involving a matter of public concern. *Id.* at 1034. Nor, as the *Connick* Court detailed, is it significant that the speech "could, in different circumstances, have been the topic of a communication to the public that might be of general interest.... [W]hether discussions of office morale and discipline *could* be matters of public concern is beside the point...." *Connick*, 461 U.S. at 148–49 n. 8, 103 S.Ct. at 1691 n. 8 (emphasis added).

Here, plaintiff's complaint related to office procedures for disciplining employees. When plaintiff made his complaint, he did so in the context of a personal dispute he was having with his superiors about whether, under the agency's guidelines, he was required first to speak to an employee before disciplining her. In accordance with *Connick*, that the complaint potentially could have escalated into something that might have been of public concern does not render it subject to constitutional protection.

2. *Was There A Causal Connection Between the Speech and the Allegedly Adverse Acts?*

Even if the circumstances were such that plaintiff's complaint was constitutionally protected, he cannot prevail on the First Amendment claim, because he cannot establish the requisite element of causation. The causal connection between the speech and the adverse employment action must be sufficient to warrant an inference that the "speech was a substantial motivating factor in the adverse employment action." *Blum*, 18 F.3d at 1010. *See Ezekwo*, 940 F.2d at 780–81. Should plaintiff shoulder that burden, defendant has the opportunity to demonstrate by a preponderance of the evidence that it would have undertaken the same adverse employment action even in the absence of the protected conduct. *Id.*

With the causation requirement in mind, it is worth reviewing, albeit briefly, the history of the allegedly retaliatory actions. Plaintiff states that defendants perpetrated the first retaliatory act in May 1990, more than three years after plaintiff made his DOI complaint. Proffit asked Schaeffer to submit an additional form in connection with a request Schaeffer had made for one and one-half days of annual leave time. Plaintiff claims that this request was retaliatory because he previously had never been asked to complete that additional form. Plaintiff told Proffit that he was not required to submit the form, and plaintiff did not submit it. His leave was approved without the form.

In August 1990, plaintiff's time and leave forms were rejected because they did not correspond to the standard 9:00 a.m.–5:00

p.m. schedule. Plaintiff applied for and received an 8:00 a.m.–4:00 p.m. flextime schedule in light of his Sabbath Observer status. The next personnel action at issue took place almost one year later in July 1991. On that occasion, plaintiff's new supervisor ordered plaintiff to request reimbursement of a client's expenses. Plaintiff again took issue with office procedure, claiming that he did not believe the expenses should be reimbursed and therefore he should not have to request reimbursement. Ultimately, plaintiff's supervisor requested the reimbursement herself.

A year later, in July 1992, each supervisor prepared a report of caseworker activity. One of the supervisors was on leave and plaintiff's supervisor asked plaintiff to prepare the report for that supervisor's team. Plaintiff refused to do this, asserting that the task was not in his job description.

■ Plaintiff has failed to establish causation for these alleged retaliatory acts. The three year lapse between the DOI complaint and the commencement of the complained-of—but basically innocuous—events makes it at best implausible that such acts occurred as a result of plaintiff's complaint.

3. *Were the Defendants' Actions Adverse?*

■ Nor can the plaintiff even show that the defendants' actions were objectionable. Defendants were entitled to make all of the requests they made of plaintiff, which plaintiff claims were retaliatory. A government employer is entitled to wide discretion in its management of internal affairs. *Connick,* 461 U.S. at 151, 103 S.Ct. at 1692; *Harris,* 845 F.Supp. at 1035 ("We hold that government employers are allowed to encourage good performance from their employees. Indeed, arguing that the state does not have the ability to encourage its employees to strive towards excellence, innovation, integrity and teamwork in their job performance is not only absurd, it also shows grave disrespect for the many government workers who perform their jobs with pride."). And government employers are allowed to take steps to encourage efficient job performance from their employees.

This appears to be all that happened here. For example, even if Schaeffer had not in the past been required to fill out a certain form for annual leave, the existence of the form shows that procedure did dictate that such a form be completed as a prerequisite to taking the leave. Defendant was entitled to request that plaintiff complete the form. With regard to the flextime schedule, plaintiff got the schedule he requested. It is unclear how this could possibly constitute an adverse act. As for the expense and activity reports that Schaeffer was asked to complete, it is similarly unclear how these requests were improper.

■ Besides, courts are not in a position to discourage a government employer from seeking to more closely supervise its employees. Merely because a government employer institutes new procedures or starts enforcing established procedures that further the permissible ends of a more efficient, able government workforce rarely rises to the level of wrongful retaliation unless perhaps where the employer makes the procedures at issue formally, or informally, applicable only to the speaker. *See, e.g., Harris,* 845 F.Supp. at 1035 (finding nothing improper with a government employer "requiring that its employees strive towards doing a good job"). Here, the efforts that plaintiff's superiors made in having him adhere to existing procedures might simply have been the result of a department- or city-wide attempt to increase such adherence; there is no evidence that plaintiff was ever singled out.

B. *Equal Protection Claim*

■ Plaintiff's remaining cause of action asserts a violation of the Equal Protection Clause supposedly brought about by plaintiff's allegedly being denied protection under the City's whistleblower policy. This contention does not constitute a valid claim upon which relief may be granted. Plaintiff is not a member of a protected class as is required for an equal protection claim. Plaintiff simply assumes that as a "whistleblower" he is a member of such a class. Plaintiff cites no precedent that supports the proposition that whistleblowers are a suspect classification.

Even if whistleblowers could be deemed a protected class, plaintiff is still left with the problem of establishing causation between his whistleblowing and the "retaliatory" actions taken by defendant. Based on the discussion above, I find that plaintiff has failed to establish causation and has failed to establish that defendants' actions were adverse. I therefore grant summary judgment for defendants on this claim as well.

## IV. *CONCLUSION*

For the reasons detailed above, defendants' motion for summary judgment is **GRANTED** in its entirety. In addition, I do not exercise jurisdiction over plaintiff's state law claim.

**SO ORDERED.**