**Timothy KALB, Plaintiff,**

v.

**Thomas WOOD, individually, Ann Lindau, individually, Glenn Cestaro, individually, Linda Puglisi, individually, and the Town of Cortlandt, New York, Defendants.**

**No. 97 Civ. 3518(BDP).**

United States District Court,
S.D. New York.

Feb. 19, 1999.

Craig T. Dickenson, Lovett & Gould, White Plains, NY, for plaintiff.

Daniel Riesel, Sive Paget & Riesel, P.C., New York City, for defendants.

## MEMORANDUM AND ORDER

BARRINGTON D. PARKER, JR., District Judge.

Plaintiff Timothy Kalb, a police officer in the Town of Cortlandt, New York, commenced this action against defendants, Thomas Wood, Ann Lindau, Glenn Cestaro, Linda Puglisi, and the Town of Cortlandt, pursuant to 42 U.S.C. §§ 1983 and 1985 alleging violations of his rights protected by the First Amendment to the United States Constitution.[1] Kalb has also asserted a claim pursuant to New York

---

1. The plaintiff alleges violations of the freedom of speech and the right to petition government for the redress of grievances as protected by the First Amendment. Because right-to-petition claims are subject to the same analysis as speech claims, the two claims will be analyzed jointly. *See White Plains Towing Corp. v. Patterson*, 991 F.2d 1049, 1059 (2d Cir.1993) (right-to-petition claims subject to the same analysis as speech claims) (citing *Wayte v. United States*, 470 U.S. 598, 610 n. 11, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985)).

State Human Rights Law, N.Y.Exec.Law § 296, for alleged employment discrimination based on a disability.

In essence, Kalb claims that his First Amendment rights were violated when his request for § 207–c line of duty disability benefits based on depression caused by an "overwhelming fear of job loss" was denied. The defendants move pursuant to Fed.R.Civ.P. Rule 56 for summary judgment dismissing the complaint. For the reasons stated below, the motion is granted.

## BACKGROUND

This suit involves the denial of benefits under New York's compensation law for police officers. General Municipal Law § 207–c provides, in part:

> Any ... [police officer] ... who is injured in the performance of his duties or who is taken sick as a result of the performance of his duties so as to necessitate medical or other lawful remedial treatment shall be paid by the municipality by which he is employed the full amount of his regular salary or wages until his disability arising therefrom has ceased, and, in addition such municipality shall be liable for all medical treatment and hospital care necessitated by reason of such injury or illness. Provided, however, ... the municipal health authorities or any physician appointed for the purpose by the municipality, after a determination has first been made that such injury or sickness was incurred during, or resulted from, such performance of duty, may attend any such injured or sick policeman ... for the purpose of providing medical, surgical or other treatment....

Section 207–c(1).

Timothy Kalb has been a police officer in the Town since 1988. Linda Puglisi is the Supervisor of the Town; Ann Lindau is a member of the Town Board; Thomas Wood, Esq. is the Town Attorney; and Glenn Cestaro is the Town Comptroller.

Upon Kalb's divorce in February 1997, Kalb's former wife and son relocated to Florida. The same month, Kalb began taking medicine for depression and on February 20, 1997, began weekly therapy sessions with Nancy Morris, a psychiatric nurse practitioner. In her evaluation report to Kalb's insurance carrier following the initial session, Morris wrote that "client has sought treatment for feelings of depression following a divorce from wife who has relocated to Florida with their 11 [year old] son."

On March 6, 1997, Kalb saw Dr. John McGurty at the suggestion of his superiors, either Chief Pavone or Sergeant Macaluso. After this visit, Dr. McGurty wrote on his prescription pad that Kalb had "situational depression" and that he should: (1) continue anti-depressant and therapy, (2) return to work only when medication was no longer needed, (3) not work for fourteen days, and (4) consider returning to work in two to three weeks. Dr. McGurty's notes for this visit state, "Patient depressed over his ex-wife's taking of his son to Florida." In addition to being Kalb's personal physician, Dr. McGurty holds the title of "police surgeon." His responsibilities in this capacity, however, do not include making determinations of eligibility for § 207–c benefits. Kalb's visit on March 6 was at Dr. McGurty's private office, and the bill was submitted to Kalb's private insurance company.

In early March 1997, Kalb informed Chief Pavone that he was receiving psychological treatment and had been taking anti-depressant medication since February 1997. He told Chief Pavone that his depression was due to recent announcements concerning the possible loss of his job. On March 4, Kalb submitted a number of firearms to the police department for safekeeping in anticipation of his pre-planned vacation to Florida in March. At some point before Kalb's vacation, he submitted Dr. McGurty's note on a prescription pad and a letter from Nancy Morris to Chief

Pavone. Morris' letter dated March 13, 1997 stated, in part:

> My opinion concerning [Kalb's] depression is that it appears to be a reaction to several stressors occurring in his life simultaneously. The most apparent of these is the recent relocation of his former wife to a distant state along with their 11 year old son. It also appears that a large degree of stress is related to job insecurity. The potential loss of his present position has clearly added considerable strain such that Mr. Kalb has had difficulty coping. I would recommend, therefore, at this time Mr. Kalb be given a leave of absence with the understanding that this will be reevaluated frequently.

Chief Pavone forwarded these two notes to Thomas Wood. In response, Wood wrote to Chief Pavone on March 18, 1997 stating:

> I am in receipt of two medical notes ... It would appear from these notes that the officer is seeking a medical leave of absence. If that is the case, please advise the officer that he must put his request in writing to the Town board ... A third party request cannot be considered as a request from the employee.

In response, Chief Pavone wrote back to Wood on March 19, 1997 stating:

> [I]t is my opinion that Officer Kalb would be eligible for leave pursuant to the provisions of GML 207–C, as it has been alleged his disability is a direct result of the policies of the Town of Cortlandt.

After this memorandum, Wood responded to Chief Pavone on March 20, 1997:

> Based upon the doctor's note which have [sic] been submitted to us, it is unclear as to whether or not the Officer's condition is job related or whether or not it has been caused by outside problems. However, if Officer Kalb wishes to claim that this is a 207–c situation, I believe it would be appropriate for him to place that in writing and submit it to us.

Upon our receipt of same, we will then have the medical records and reports evaluated by competent physicians who will then make a recommendation to the Town.

As you know, under the provisions of the General Municipal Law, the employer has the right to analyze and review both the incidents that are claimed to have caused the situation, as well as the physical condition of the employee prior to making a determination that the employee is eligible for 207–c.

Upon receipt of Officer Kalb's written letter, we will begin the review process.

From March 16 to April 5, Kalb went to Florida and believed he was on § 207–c leave. This time in Florida, however, was deducted as sick and vacation time. On April 7, 1997, Wood wrote to Kalb stating that it was unclear whether Kalb was requesting a medical leave of absence and, if so, he needed to submit a written letter specifically requesting such a leave. On April 9, 1997, Kalb hand delivered a letter to Chief Pavone stating that he believed that Wood's behavior amounted to unlawful First Amendment retaliation and if the matter regarding his § 207–c benefits was not resolved immediately he would commence a legal proceeding against Wood. Kalb also submitted a Town Employee Injury and Illness Report signed April 10, 1997. The form stated that Kalb was suffering from depression, which he attributed to job insecurity prompted by threats by Puglisi, Wood and others to abolish the police department.

Although Wood had not yet received a written request from Kalb, on March 24 he forwarded Kalb's information to Oracle Management Services, Inc., the company hired by the Town in 1991 to process claims for workers' compensation and § 207–c benefits. Oracle processes claims for a number of municipalities and towns, including Westchester, Orange and Putnam Counties, the cities of Yonkers, Mt. Vernon and New Rochelle, and the towns of Yorktown and Cortlandt. In processing

claims for benefits, Oracle reviews the Employee Injury and Illness reports and the medical information submitted to determine whether an evaluation by an independent physician (or further investigation) is necessary. Wood requested that Oracle evaluate Kalb's eligibility for § 207–c benefits.

Constance Kriz, the Unit Manager at Oracle, reviewed Kalb's claim. Upon review of Kalb's Employee Injury and Illness Report, as well as Morris and Dr. McGurty's notes, Kriz determined that an independent evaluation of Kalb's condition and its causal relationship, if any, to his responsibilities as a police officer, was necessary. Oracle arranged to have Kalb meet with Dr. Robert Sussman, a psychiatrist. Dr. Sussman, after completing a medical and family history which revealed that Kalb had been experiencing depression for the past two years and that two of Kalb's siblings were suffering from depression, found that at the time of the April 15, 1997 examination Kalb was 50% disabled from depression. Dr. Sussman attributed 75% of Kalb's depression to issues in Kalb's personal life and 25% to Kalb's fear that the police department would be disbanded. Sussman's report to Oracle stated, "The possible disbanding of the department is a worry as it would be to anyone whose job might be abolished."

Based on Sussman's report, and Kalb's notes from Morris and Dr. McGurty, Kriz determined that Kalb's depression was mostly caused by personal life issues and any fear of job loss was not a "line of duty" injury or illness under § 207–c. Kriz sent Kalb an Oracle letter dated April 22, 1997 informing him that his claim had been denied. Under the collective bargaining agreement between the Town and the police officer's union, any dispute regarding § 207–c benefits could be reviewed by a independent hearing officer. Kalb did not request such a review.

Kalb claims that his denial of § 207–c benefits was in retaliation for his participation in two lawsuits against the Town. Apparently Chief Pavone and the Town administration have had intense conflict over budgetary and personnel issues over the years, which has resulted in the Chief suing the Town (*Pavone v. Lindau*, 96 Civ. 4993 (*"Pavone II"*)).[2] At some point, the Town Board contemplated abolishing the police department which prompted the Chief and police officers, including Kalb to file *Pavone v. Puglisi*, 96 Civ. 6776, (*"Pavone III"*), against the Town Board seeking to enjoin the abolition of the department.

These two cases were consolidated before the Honorable Charles L. Brieant. Ultimately, the Court held on December 17, 1997, that assuming the Chief in *Pavone II* had spoken on a matter of public concern, he was unable to show that he had suffered any adverse employment action, and the issue in *Pavone III* was moot because the Town Board had abandoned its idea to abolish the department and the department was funded for 1997 and 1998 at the same rate it had been for 1996. Kalb was also a plaintiff in a suit filed by the Town Police Benevolent Association against the Town alleging violations under the Fair Labor Standards Act, *Diana v. Town of Cortlandt*, 96 Civ. 6045 (*"Diana"*). The plaintiff has provided no information as to the disposition of this case.

As evidence of retaliation and pretext, Kalb contends that police officer Henry Reinhardt was also denied § 207–c benefits because of his participation in the same two lawsuits. Reinhardt, however, did not claim his denial was based on retaliation. Reinhardt filed a suit against the Town with the New York Supreme Court challenging the delegation of § 207–c review to Oracle. Reinhardt lost his challenge and thereafter filed a grievance which was eventually settled and the § 207–c claim withdrawn. Kalb also

---

**2.** *Pavone v. Puglisi*, 94 Civ. 6140, (*Pavone I*), which contained many of the same allegations in *Pavone II*, was settled by the Chief and the Town.

points to late 1997 discussions between the Town and the police union in which the union wanted to vest § 207–c decision-, making power with the Chief of Police and the Town Board wanted to vest the power with the Town Comptroller. Additionally, Kalb points out that in the fall of 1997, the Town modified the procedure so that Oracle would simply recommend granting or denying the benefits, in place of its prior role of actually making the decision for the Town. The defendants state that this modification was in response to the issues of delegation raised by Reinhardt and had no connection to Kalb's benefits.

Although Kalb in 1991 and 1995 suffered line of duty injuries and filled out Town Employee Injury and Illness Reports that were reviewed and approved by Oracle for § 207–c coverage, he believes, with respect to his 1997 request, that he was the first police officer who had to endure this application process for benefits and was subject to an *ad hoc* procedure not otherwise used. Kalb relies on Chief Pavone's deposition testimony that throughout his tenure as police chief there was only a loosely defined procedure for the receipt of § 207–c benefits. The Chief recalls making written submissions, but he believed his advice to the Town Attorney or Comptroller on whether he thought an officer should receive the benefits was dispositive. Chief Pavone also does not remember any other officer ever being denied § 207–c benefits.

Although Kriz maintains that she was not aware of any litigation between Kalb and the Town and that she never spoke to any Town official regarding Kalb's claim for benefits, Kalb claims Oracle is not independent of the Town. His claim is based on the fact that a principal of Oracle is a former elected part-time Town Court judge.

After April 24, 1997, Morris referred Kalb to the Dutchess County Department of Mental Hygiene Partial Hospitalization Program where Kalb saw several new doctors concerning his depression. Plaintiff's counsel has submitted documentation from these new doctors with this motion. This new documentation, however, was not submitted to Oracle in connection with its determination of § 207–c benefits. Since April 4, 1997, Kalb has been on unpaid medical leave, receiving disability insurance and social security disability benefits. Kalb also remains on the Town's payroll as an employee, and continues to receive medical insurance.

## DISCUSSION

### 1. Summary Judgment Standard

A motion for summary judgment should be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Hayes v. New York City Dep't. of Corrections,* 84 F.3d 614, 619 (2d Cir.1996); *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991). The court is to perform "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *McNeil v. Aguilos,* 831 F.Supp. 1079, 1082 (S.D.N.Y.1993) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)); *Hayes,* 84 F.3d 614 at 619.

In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities in the light most favorable to, and draw all reasonable inferences in favor of, the party opposing the motion. *Wernick v. Federal Reserve Bank of New York,* 91 F.3d 379, 382 (2d Cir.1996); *In re State Police Litigation,* 88 F.3d 111, 123 (2d Cir.1996). The Court must not weigh evidence or assess the credibility of potential witnesses, for such evaluations are to be conducted solely by the jury. *Hayes,* 84 F.3d at 619; *United States v. Rem,* 38

F.3d 634, 644 (2d Cir.1994); *Azrielli v. Cohen Law Offices,* 21 F.3d 512, 517 (2d Cir.1994). A finding of disputed material facts that could reasonably be resolved in favor of either party precludes summary judgment. *Wernick,* 91 F.3d at 382 (quoting *Anderson v. Liberty Lobby,* 477 U.S. at 250, 106 S.Ct. 2505).

Generally, the burden is on the moving party to demonstrate that there is no genuine dispute respecting any material fact and that he is entitled to judgment as a matter of law. *In re State Police Litigation,* 88 F.3d at 123; *Gallo v. Prudential Residential Services, Limited Partnership,* 22 F.3d 1219, 1223 (2d Cir.1994). To successfully oppose a motion for summary judgment, the responding party "must set forth facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). A summary judgment motion cannot be defeated through mere speculation or conjecture. *Pollis v. New School for Social Research,* 829 F.Supp. 584, 586 (S.D.N.Y. 1993) (citing *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir. 1990) (other citations omitted)).

### 2. First Amendment Claim

■■■ To succeed on his First Amendment claim, Kalb "must demonstrate, by a preponderance of the evidence, that the speech at issue was protected, that he suffered an adverse employment action, and that there was a causal connection between the protected speech and the adverse employment action." *Blum v. Schlegel,* 18 F.3d 1005, 1010 (2d Cir.1994) (citing *Mount Healthy Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 283–287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). If a plaintiff is able to establish a *prima facie* case, a public employer still may avoid liability by showing that it would have taken the same adverse action in the absence of the protected speech. *Id.* (citation omitted).

■■■ Speech by a public employee is constitutionally protected only when the speech is of public concern. *See Ezekwo v. New York City Health & Hosps. Corp.,* 940 F.2d 775, 781 (2d Cir.1991). The question of whether an "employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers,* 461 U.S. 138, 147–148, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). Speech will be fairly characterized as a matter of public concern if it relates to any matter of political, social, or other concern to the community. *Id.* at 146, 103 S.Ct. 1684.

■■■ A public employee's speech on matters of purely personal interest or on internal office affairs do not constitute matters of public concern and are therefore not entitled to constitutional protection. *See Verri v. Nanna,* 972 F.Supp. 773, 785 (S.D.N.Y.1997) (citations omitted); *see also Connick,* 461 U.S. at 148–149, 103 S.Ct. 1684 ("To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark—and certainly every criticism directed at a public official—would plant the seed of a constitutional case."). "[W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of a personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Connick,* 461 U.S. at 147, 103 S.Ct. 1684. The First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs. *Id.* at 149, 103 S.Ct. 1684.

Here, Kalb claims that his participation in two lawsuits ("*Pavone III*" and "*Diana*") against the Town constitutes speech on matters of public concern entitled to First Amendment protection. *Pavone III,* as stated earlier, was a lawsuit by the police department against the Town seeking an enjoinment of the Town's disbanding of the department which was allegedly

in retaliation for First Amendment activity. Since the Court granted summary judgment for the defendants based on issues of mootness and ripeness, it is unclear whether any First Amendment protected speech was established in *Pavone III.* Kalb asserts in his Rule 56.1 Statement, but not in his complaint, that his participation in *Diana,* a lawsuit filed under the Fair Labor Standards Act, is also protected speech. The plaintiff, however, fails to provide any further information on this case. In any event, for purposes of this motion, I assume, without deciding, that Kalb's participation in the lawsuits constituted protected First Amendment speech.

 The denial of Kalb's § 207–c benefits can be considered adverse employment action. *See Bernheim v. Litt,* 79 F.3d 318, 325–326 (2d Cir.1996). Kalb fails, however, to establish a causal connection between the speech and adverse act. The causal connection between the speech and the adverse employment action must be sufficient to warrant an inference that the "speech was a substantial motivating factor in the adverse employment action." *Blum,* 18 F.3d at 1010.

Oracle has been employed by the Town to process workers' compensation claims since 1991. The manager who reviewed Kalb's claim did not deviate from the established procedures and had no knowledge of lawsuits filed by Kalb nor did the manager have any contact with the named defendants. These assertions are deemed admitted because they are uncontroverted by Kalb. *See Local Rule 56.1.* The supplemental medical documentation submitted by Kalb on this motion was not supplied to Oracle. The only documentation relied on by Oracle were the submissions by Kalb (the Employee Injury and Illness Report), Morris, Dr. McGurty and Dr. Sussman. Morris' note attributed the depression overwhelmingly to Kalb's former wife's relocation to Florida with their son and Dr. McGurty's note did not give any reason for the depression. Dr. Sussman's analysis concluded that Kalb was 50% disabled from depression with only 25% of that 50% attributed to depression based on the possible disbandment of the department. Oracle's assessment that Kalb had not suffered an injury in the line of duty under § 207–c was reasonable and well-founded considering the documentation it received and on which it was entitled to rely.

Further, the allegation that Kalb was subjected to *ad hoc* procedures and that the request by Wood to submit a § 207–c request in writing was in retaliation is unfounded by the record considering that on two prior occasions Kalb submitted written Employee Injury and Illness reports that Oracle approved for § 207–c benefits.

Additionally, Kalb has produced no admissible evidence of Lindau, Cestaro or Puglisi's individual involvement in the denial of his benefits, or that an Oracle official's past position as a Town judge had any connection to his actual denial of benefits.

As previously noted, a party opposing summary judgment cannot rely on mere conclusory allegations, but must produce "some affirmative indication that his version of relevant events is not fanciful." *Podell v. Citicorp Diners Club, Inc.,* 112 F.3d 98, 100 (2d Cir.1997) (quoting *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980)). Here, Kalb has failed to produce any evidence of a causal nexus between the denial of benefits and his alleged protected speech. *See Garber v. New York City Police Dep't,* 95 cv 2516, 1997 WL 525396, (S.D.N.Y. Aug. 22, 1997) (granting summary judgment on plaintiff's First Amendment retaliation claim because plaintiff failed to establish that he suffered an adverse employment action), *aff'd,* 159 F.3d 1346 (2d Cir.1998); *see Schaeffer v. City of New York,* 889 F.Supp. 97, 101 (S.D.N.Y.1995) (granting summary judgment on plaintiff's First Amendment retaliation claim because plaintiff had failed to establish, *inter alia,* a causal connection between the protected speech and the adverse action).

Kalb's reliance on the denial of § 207–c benefits to officer Reinhardt as support for his claim of retaliation, does not assist him since Reinhardt did not claim his denial was in retaliation for First Amendment speech, and after filing a grievance with the Town, settled and withdrew his claim for § 207–c benefits. Similarly, the Town's denial of another police officer's claim for § 207–c benefits, without more, does not show a causal connection between the denial of benefits to Kalb and his protected speech. Further, Chief Pavone's assertion that he had control of whether officers received § 207–c benefits does not create a genuine issue of fact considering his own statement that documentation would be submitted to Wood and Cestaro, and the absence of any admissible evidence of any irregularities in the manner in which Oracle has administered compensation claims. Drawing all inferences in favor of Kalb, I find that no reasonable juror could conclude that there is a causal connection between the denial of § 207–c benefits and Kalb's protected speech. Consequently, Kalb has failed to prove his First Amendment retaliation claim.

■■■■■ Moreover, assuming *arguendo* that Kalb had established a *prima facie* case of First Amendment retaliation, I find the defendants have demonstrated that, regardless of the plaintiff's purportedly protected speech, they would have taken the same action regarding § 207–c benefits. Psychological treatment is covered by § 207–c if it is "necessitated by reason of an injury incurred in the performance of a police officer's duties." *Miller v. City of Poughkeepsie*, 185 A.D.2d 594, 586 N.Y.S.2d 396, 398 (N.Y.Sup.Ct.1992). Section 207–c, however, does not provide for automatic entitlement. A municipality is authorized under § 207–c to determine whether the injury or illness is related to work performance, and to require the applicant to submit to an independent medical examination. *DePoalo v. County of Schenectady*, 85 N.Y.2d 527, 532–533, 626

N.Y.S.2d 737, 650 N.E.2d 395 (1995). Accordingly, the defendants were entitled—and indeed obligated—to evaluate whether Kalb's injury was related to work performance, and to require him to be independently examined.

The record demonstrates that the Town had a procedure in place for granting § 207–c benefits since 1991. Thus, Wood's request that Kalb put his request in writing was not *ad hoc*, retaliatory, or otherwise improper. Further, the record demonstrates that Kalb had filled out forms on two prior occasions for § 207–c benefits. Oracle had sufficient reason, given the vagueness of Kalb's submitted documentation of depression, to request an independent evaluation of Kalb. Additionally, the text of § 207–c supports Oracle's denial of benefits. Oracle was justified in concluding that Kalb's depression stemming from an overwhelming fear of job loss was not an injury under § 207–c. Section 207–c explicitly limits benefits to a police officer who is "injured in the performance of his duties or who is taken sick as a result of the performance of his duties." Section 207–c(1).

The fact that Kalb now produces additional evidence of his depression is irrelevant as to whether Oracle's evaluation of Kalb's claim was performed in accordance with standard procedures and whether its ultimate conclusion was reasonable given the documentation timely presented to it. In sum, in light of Oracle's role as claims evaluator since 1991, Kalb's filling out of forms in the past, the content of the two notes submitted by Kalb (only one of which spoke to the causation of the depression), and the content of Oracle's independent evaluation, the procedures and its ultimate denial of Kalb's § 207–c benefits was a reasonable decision.

Thus, assuming *arguendo* that Kalb had established a *prima facie* case of First Amendment retaliation, the defendants have demonstrated that they would have taken the same action against Kalb with respect to his claim for § 207–c benefits.

Thus, the defendants' motion for summary judgment on plaintiff's First Amendment free speech and right to petition government claims is granted.

### 3. Section 1985 Claim

Kalb's complaint mentions, but does not state a claim under 42 U.S.C. § 1985. Kalb generally alleges a § 1985 violation, but does not indicate which subsection he believes applies. Section 1985(1) and the first clause of § 1985(2) address conspiracies to prevent federal officers from discharging their duties and conspiracies to interfere with proceedings in federal courts, respectively. Since no federal officer is named in the complaint, Kalb states no claim under these provisions. In order to proceed under § 1985(2), a plaintiff must allege a deprivation of rights on account of his membership in a protected class. Further, § 1985(3) prohibits conspiracies to deprive "either directly or indirectly, any person . . . of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). Under § 1985(3) a "plaintiff must allege 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" *Gagliardi v. Village of Pawling*, 18 F.3d 188, 194 (2d Cir.1994) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971)); *see also Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir.1999). Kalb has not asserted any membership in a protected class. Since Kalb has not alleged any specific facts in his complaint to support his conspiracy claim pursuant to any subsection of 42 U.S.C. § 1985, I grant the defendants' motion for summary judgment on the § 1985 claims.

### 4. State Law Claim

In view of the dismissal of plaintiff's federal claims pursuant to 42 U.S.C. §§ 1983 and 1985, I decline to entertain his pendent state claim under New York Executive Law § 296. *See, e.g., Salim v.*

*Proulx,* 93 F.3d 86, 92 (2d Cir.1996); *Lennon v. Miller,* 66 F.3d 416, 426 (2d Cir. 1995).

### CONCLUSION

For the reasons stated above, the defendants' motion for summary judgment is granted. The Clerk of the Court is directed to enter judgment for the defendants.

**SO ORDERED.**