Iris **VELASQUEZ**, Plaintiff,

v.

**GOLDWATER MEMORIAL HOSPITAL, New York Health and Hospitals Corp., City of New York, Elizabeth Lockhart, Defendants.**

No. 98 Civ. 5820(SHS).

United States District Court, S.D. New York.

March 16, 2000.

Louis A. Zayas, Conover & Zayas, New York City, for Plaintiff.

Elizabeth Anne Galani, Michael D. Hess, Corporation Counsel of the City of N.Y., New York City, for Defendants.

## OPINION

STEIN, District Judge.

Plaintiff Iris Velasquez brings this action alleging that her employers violated her rights pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as well as 42 U.S.C. § 1983, and New York State and New York City human rights laws.[1]  Plaintiff alleges that defendants fired her because she is Hispanic and because she complained about a putative language policy.  Defendants now move for summary judgment pursuant to Fed.R.Civ.P. 56. For the reasons set forth below, defendants' motion is granted and the complaint is dismissed.

## I.  Background and Relevant Facts

In January 1997, plaintiff began her employment with the New York City Health and Hospitals Corporation ("HHC") as a patient representative at Goldwater Memorial Hospital, an HHC facility.[2]  As a patient representative, Velasquez was primarily responsible for interpreting hospital

---

1.  The New York State Human Rights Law is found in New York Executive Law § 296, and the New York City Human Rights Law is found in the Administrative Code and Charter of the City of New York § 8–206.

2.  Unless otherwise noted, the relevant facts are undisputed.

policies to patients and responding to patient concerns.

The job opening for patient representative specified that "Bi–Lingual Spanish" ability was preferred. Plaintiff interviewed first with Monserrate Nieves–Martinez, Director of the Patient Relations Department, who is also Hispanic, and subsequently with named defendant Elizabeth Lockhart, Risk Manager of Goldwater. During her interviews with Martinez and Lockhart, Velasquez was informed that they were seeking a Spanish-speaking patient representative to serve the hospital's large Hispanic patient population. Both Lockhart and Martinez recommended Velasquez for the position, and she was hired for a probationary period of three months. Velasquez's direct supervisor was Martinez, who in turn reported to Lockhart.

During the course of plaintiff's employment as a patient representative, several memoranda, authored by either Martinez or Lockhart, were placed in plaintiff's file detailing problems with her performance. The memoranda included descriptions of conflicts between plaintiff and other members of the department regarding plaintiff's lunch-break and vacation schedule. See Exhs. H, J, K, L to Galani Affidavit. One memorandum described problems that Velasquez had encountered with her fellow employees while taking a mandatory tuberculosis test, in which she was described as being "rude" and was reprimanded for reading her own medical chart in violation of hospital policy. See Exh. M to Galani Affidavit.

Plaintiff had several interchanges with her supervisors and co-workers during her probationary period regarding the use of Spanish in the workplace. On March 17, 1997, while plaintiff and Martinez were speaking to one another in Spanish, Rose McKee, the office manager, approached them and told them not to speak Spanish. See Velasquez Dep. at 116; Martinez Dep. at 54; McKee Dep. at 32. The following day at a meeting, plaintiff asked Lockhart whether there was a policy prohibiting the staff from speaking in a language besides English. See Velasquez Dep. at 119. According to plaintiff, Lockhart's response was "There is no such a policy, but you are not allowed to speak in Spanish here." See Velasquez Dep. at 119. Lockhart testified that she said that "English was the custom when conducting business, however if she [plaintiff] felt the need to speak Spanish, speak Spanish." See Lockhart Dep. at 181. Plaintiff also alleges that Martinez told her several times that the members of the department "don't like it when we speak Spanish." See Velasquez Dep. at 112–14.

One week after Lockhart allegedly informed plaintiff that she was not permitted to speak Spanish, but still during the three month probationary period, plaintiff was terminated.

Several months later, after receiving a no action letter from the EEOC, plaintiff filed this action alleging that she was terminated on the basis of her national origin and retaliated against for complaining about Goldwater's alleged language policy.

## II. Discussion

Summary judgment is granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Fed.R.Civ.P. 56(c). On a motion for summary judgment the moving party has the burden of demonstrating the absence of a genuine issue of material fact and the court must construe the evidence in the light most favorable to the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court's task is limited to "discerning whether there are any genuine issues of material fact to be tried, not to deciding them." Kerzer v. Kingly Manufacturing, 156 F.3d 396, 400 (2d Cir.1998).

A. Employment Discrimination Claims

In a Title VII case, the Court applies the three-step burden shifting analysis of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973).[3] First, a plaintiff must make a prima facie showing of national origin discrimination. In order to establish a prima facie case, a plaintiff must show (1) that she belongs to a protected class; (2) that she was performing her duties satisfactorily; and (3) that her discharge occurred in circumstances giving rise to an inference of discrimination on the basis of her membership in that class. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

If a plaintiff succeeds in establishing a prima facie case, a presumption of discrimination is raised and the burden of production shifts to the defendants to "articulate a legitimate, clear, specific and non-discriminatory reason for discharging the employee." *Quaratino v. Tiffany,* 71 F.3d 58, 64 (2d Cir.1995). If the defendants satisfy their burden, the burden of persuasion falls upon the plaintiff to demonstrate that the defendants' proffered reasons are merely a pretext for discrimination. *Hicks,* 509 U.S. at 515, 113 S.Ct. at 2752; *see also Quaratino,* 71 F.3d at 64. In order to demonstrate such a pretext, a plaintiff must establish through direct, statistical, or circumstantial evidence that a genuine issue of material fact exists as to whether the employer's asserted reason for its decision is false and is, more likely than not, a pretext for racial discrimination. *See Gallo v. Prudential Residential Services,* 22 F.3d 1219, 1225 (2d Cir.1994).

■ For purposes of this decision, it will be assumed that plaintiff has met the *de minimis* burden necessary to state a prima facie case. *See Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196, 202 (2d Cir.1995).

In addition, defendants have produced sufficient evidence of a legitimate non-discriminatory motivation behind Velasquez's termination to have met their burden. Plaintiff was a probationary employee who had several well-documented disciplinary problems during her three-month period of employment at the hospital. According to her supervisors, she was inflexible and difficult when discussing scheduling issues, both in terms of lunchtime and vacation. *See* Exhs. H, J, K, L to Galani Affidavit. In addition, she caused several problems for her co-workers when she went to take her mandatory tuberculosis test and was perceived as being "very rude." *See* Exhibit M to Galani Aff. Taken together, this evidence constitutes a legitimate non-discriminatory reason to terminate a three month probationary employee.

Accordingly, the burden of persuasion shifts to plaintiff to demonstrate that the proffered non-discriminatory reason was merely a pretext for discrimination; i.e. both that defendants' proffered reasons were false and that the real reason for her termination was discriminatory animus based on her national origin. *See St. Mary's Honor Ctr.,* 509 U.S. at 515–16, 113 S.Ct. 2742; *Bickerstaff v. Vassar College,* 196 F.3d 435, 446 (2d Cir.1999); *Quaratino,* 71 F.3d at 64.

While plaintiff disputes in her deposition and affidavit that she was inflexible or difficult or caused problems, she has failed to meet her ultimate burden of persuasion because she is unable to demonstrate that defendants' legitimate proffered reasons were a mere pretext for discrimination. *See Bickerstaff,* 196 F.3d at 447 (2d Cir. Nov.12, 1999) (citations omitted). Her claim relies entirely upon her allegations that the hospital had an unwritten policy prohibiting the use of any language other than English and that she was terminated for violating that policy. Thus, the central question presented in this case is whether

---

**3.** This procedure is the same for the state and local claims. *See Norville v. Staten Island University Hospital,* 196 F.3d 89, 95 (2d Cir. 1999). Therefore, for these purposes, the analysis of plaintiff's Title VII claim and her state and local claims is identical.

an employer's adoption of a language policy is evidence of a discriminatory animus such that plaintiff may survive summary judgment on the strength of the sole issue of fact of whether or not such a policy exists. Because it is unclear whether plaintiff is alleging that Goldwater has an unwritten English-only rule or whether it has an unwritten no-Spanish policy, each of these possibilities will be addressed in turn.

Plaintiff relies upon EEOC regulations that state that English only policies are presumptively discriminatory. *See* 29 C.F.R. § 1606.7 (1991). The regulations provide that an English-only rule that is applied "only at certain times," is permissible only insofar as the employer is able to demonstrate that the rule is justified by a business necessity. *See* 29 C.F.R. § 1606.7(b). According to plaintiff, the policy in this case is applicable "only at certain times," since plaintiff was hired to speak Spanish with Spanish-speaking patients, and there is no allegation that when she was not conducting business she was not permitted to speak Spanish.

To the extent that plaintiff's argument would require the Court to read this regulation to allow her to circumvent her burden of proving discriminatory intent by creating a presumption of discrimination, the guideline is inconsistent with the plain language of the statute.[4] Pursuant to Title VII, a plaintiff must demonstrate that the defendant employer took the adverse employment action "because of" her protected status. *See* 42 U.S.C. § 2000e–2(a)(1–2). Accordingly, in order to make out a disparate treatment claim that can survive this motion for summary judgment, there must be a triable issue of fact as to whether defendants intentionally discriminated against Velasquez on the basis of her national origin. *See Watson v. Fort Worth Bank and Trust,* 487 U.S. 977, 986, 108 S.Ct. 2777, 2784, 101 L.Ed.2d 827 (1988). Discriminatory intent is "the critical issue." *Smith v. Xerox Corp.,* 196 F.3d 358,

370 (2d Cir.1999). Accordingly, plaintiff must present sufficient evidence to enable a rational trier of fact to find that she was terminated "because of" her national origin.

■ Demonstrating only that she was terminated for violating an English-only policy does not satisfy this burden. Classification on the basis of language does not by itself "identify members of a suspect class" and would not support an inference of intentional national origin discrimination. *See Soberal–Perez v. Heckler,* 717 F.2d 36, 41 (2d Cir.1983). Plaintiff would have to have raised a triable issue of fact demonstrating that national origin discrimination was the motivating factor for the adverse employment action. Raising a triable issue of fact regarding the existence of an English-only policy will not suffice. "Neither the statute nor common understanding equates national origin with the language that one chooses to speak." *Garcia v. Gloor,* 618 F.2d 264, 268 (5th Cir. 1980); *see also Long v. First Union Corp. of Virginia,* 894 F.Supp. 933, 941 (E.D.Va. 1995), *aff'd* 86 F.3d 1151 (4th Cir.1996) ("There is nothing in Title VII which protects or provides that an employee has a right to speak his or her native tongue while on the job."). Accordingly, this Court finds that even if Velasquez has raised a material dispute as to whether or not there was an English-only policy and that she was terminated for violating this policy, this would not constitute sufficient evidence by itself to raise an inference of discriminatory animus on the basis of national origin.

■ Plaintiff has also alleged that the hospital had an unwritten "no-Spanish" policy. This allegation raises a separate issue from the alleged English-only policy analyzed above; if the policy prohibits employees from speaking Spanish, then language, a seemingly neutral characteristic, could be used to disguise a discriminatory

---

4. The analysis is the same even if plaintiff were to argue that the English-only policy was applicable at all times. *See* 29 C.F.R. § 1606.7(a).

motive. Clearly, if the English-only rule was used to discriminate intentionally against a person of a particular national origin, the employer would have violated Title VII in this case. In other words, if plaintiff were able to present evidence that other employees were permitted to speak in, for example, Chinese or Portugese, but not Spanish, such evidence could support an inference of intentional discrimination on the basis of national origin.

There is no such evidence here. First, nothing in the evidence indicates that the policy was being implemented specifically against Hispanics or that it was Spanish in particular that was targeted. Plaintiff has not presented a scintilla of evidence that other employees were permitted to speak in languages other than English. Moreover, the only remark that could be taken to reflect a discriminatory attitude was Lockhart's alleged remark that plaintiff was "not allowed to speak Spanish here." In order to support an inference of discrimination a reasonable jury would have to believe that these remarks "directly reflect[ ] the alleged discriminatory attitude." *Raskin*, 125 F.3d at 60–61. One stray remark that does not even by itself evince a discriminatory attitude is not sufficient to preclude summary judgment. It was reasonable for Lockhart to tell Velasquez not to speak Spanish, when she knew that Spanish in particular was the only non-English language plaintiff was likely to speak.

Second, there are several other factors that make it improper to impute invidious discrimination to this situation. When the person who made the decision to hire plaintiff is the same person who made the decision to fire plaintiff, it is difficult to impute an invidious motivation that would be inconsistent with the decision to hire. *See Grady v. Affiliated Central, Inc.*, 130 F.3d 553, 560 (2d Cir.1997). Moreover, the inference is even weaker when the decision to terminate occurred shortly after the decision to hire. *See id.* (discounting likelihood of discrimination given that the plaintiff was fired by same individual who promoted her less than two years previously). In this case, the same people – Martinez and Lockhart – hired and fired plaintiff and did so within the brief span of three months. Moreover, Velasquez's argument is simply not plausible in this case, given that the hospital advertised for an employee not merely with Spanish language ability, but one who was bilingual in Spanish.

At best, the evidence presented by Velasquez could plausibly support an inference that she was terminated for violating the hospital's unwritten policy that employees must speak English while conducting hospital business. This evidence, standing alone, would be insufficient to support an inference that she was terminated because of her national origin, especially because the job description states that "Bi–Lingual Spanish" ability was preferred.

■ Defendants' motion for summary judgment is granted in regard to plaintiff's discrimination claims pursuant to Title VII and New York State and New York City Human Rights laws.[5]

## B. Retaliation Claim in Violation of Title VII

■ Plaintiff claims that she was retaliated against for complaining about the alleged no-Spanish policy to Lockhart. In

---

5. In a mixed motive case, a theory upon which plaintiff also relies, a plaintiff may establish a prima facie case by proving that the discriminatory factor played a motivating role in or contributed to, the employer's decision. *See de la Cruz v. New York City Human Resources Admin.*, 82 F.3d 16, 23 (2d Cir.1996) (citations omitted). Once plaintiff offers such evidence, the burden shifts to the employer to demonstrate that it would have reached the same decision even in the absence of the impermissible factor. *See id.* at 23 (citation omitted). The discussion above governs the resolution of this claim as well: even if plaintiff were able to demonstrate a material issue of fact as to whether plaintiff's use of Spanish was a motivating factor in her termination, this claim would not survive summary judgment in a disparate treatment case.

order to establish a prima facie case of retaliation, plaintiff must demonstrate that: (1) she was engaged in a protected activity; (2) the employer was aware of plaintiff's participation in the protected activity; (3) the employer took adverse action against plaintiff; and (4) a causal connection exists between the plaintiff's protected activity and the adverse action taken by the employer. *See Cosgrove v. Sears, Roebuck & Co.*, 9 F.3d 1033, 1039 (2d Cir.1993).

■ Regardless of whether plaintiff was even engaged in protected activity, her employer must have understood, or been able to understand, that plaintiff's opposition was directed at conduct prohibited by Title VII. *See Galdieri–Ambrosini v. National Realty & Development Corp.*, 136 F.3d 276, 292 (2d Cir.1998). According to her own allegations, plaintiff merely asked if there was such a policy and then asked a follow-up question which was, in her words, "[m]y understanding is that you hire[d] me because I can communicate in Spanish with Spanish speaking patients who cannot communicate in English." Plaintiff never told Ms. Lockhart that she believed that this policy was discriminatory. *See Shin v. ITOCHU International Inc.*, 1998 WL 474198, *4 n. 2 (S.D.N.Y. 1998) (emphasis added) (while plaintiff complained about a disciplinary letter she received, she "never connected it with any protected status she held, nor did she describe any disparate treatment of her by her supervisor"). Plaintiff did not in any way link her comments to her protected status. *See Galdieri–Ambrosini*, 136 F.3d at 292; *Ramos v. City of New York*, 1997 WL 410493, at *2 (S.D.N.Y. July 22, 1997)

6. Plaintiff did engage in protected activity at a later time, that is, when she filed a discrimination charge with the EEOC on July 21, 1997, four months after plaintiff was terminated. However, the alleged retaliation significantly predates the filing of that charge. Plaintiff has argued that Goldwater retaliated against her for filing the EEOC charge by defaming her in two television news reports. However, making comments about an employee four months after her termination does not constitute adverse employment action.

("[I]n order to be protected activity the complainant must put the employer on notice that the complainant believes that discrimination is occurring."). Lockhart's testimony that she felt that plaintiff's comment was a "significant remark," is insufficient to raise a triable issue of fact regarding her knowledge that plaintiff was engaged in protected activity.

■ Reading the record in the light most favorable to the nonmoving party, plaintiff has failed to raise a triable issue of fact demonstrating that she was engaged in protected activity.[6] Accordingly, plaintiff has failed to make out a prima facie case of retaliation and the claim is dismissed.

### C. Section 1983 Claim

Plaintiff has also alleged, pursuant to 42 U.S.C. § 1983, that she was retaliated against for asserting her First Amendment rights.

■ To make out a prima facie case on such a claim, a litigant must establish first that the conduct at issue was protected speech – in other words that it can be fairly characterized as constituting speech on a matter of public concern – and second, that the speech was at least a substantial or motivating factor in the discharge. *See Mt. Healthy City School Dist. Bd. of Education v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977); *Frank v. Relin*, 1 F.3d 1317, 1328–29 (2d Cir.1993).

While an employer's wrongful blacklisting or refusal to provide a reference could constitute adverse employment action, *see Pantchenko v. C.B.Dolge Co.*, 581 F.2d 1052, 1055 (2d Cir. 1978), "[w]here, however, there is no admissible evidence that the statements of the former employer caused or contributed to the rejection by the prospective employer, the plaintiff has failed to present a prima facie case." *See Sarno v. Douglas Elliman–Gibbons & Ives*, 183 F.3d 155, 160 (2d Cir.1999).

Even if this Court were to find that plaintiff's speech was of public concern, this claim would still be dismissed on the grounds that Velasquez has failed to raise a material issue of fact as to whether or not the speech in question was the cause of her termination. The causal connection must be sufficient to warrant the inference that the protected speech was a substantial or motivating factor in the adverse employment action. *See Ezekwo v. NYC Health & Hospitals Corp.,* 940 F.2d 775, 780–81 (2d Cir.), cert. denied, 502 U.S. 1013, 112 S.Ct. 657, 116 L.Ed.2d 749 (1991). Should a plaintiff demonstrate these factors, the defendant has the opportunity to demonstrate by a preponderance of the evidence that it would have undertaken the same adverse employment action "even in the absence of the protected conduct." *Mount Healthy,* 429 U.S. at 287, 97 S.Ct. at 576. In this case, plaintiff has proffered absolutely no evidence, beyond the proximity of the timing of her meeting with Lockhart and her termination, to prove that her termination was motivated by the fact that she made these statements.[7]

## III. Conclusion

For the foregoing reasons, defendants' motion for summary judgment in their favor is granted.

[7.] Plaintiff also claims that certain statements made by her and by Goldwater representatives to the media are evidence that her termination was motivated by protected speech. However, all of these statements occurred after her termination and are therefore not relevant here.