**Anna RIVERA Plaintiff,**

v.

**COMMUNITY SCHOOL DISTRICT NINE, Maria Santory Guasp, Superintendent of Community School District Nine, Board of Education of the City of New York, and Harold O. Levy, Chancellor of the Board of Education of the City of New York, Defendants.**

**No. 00 CIV. 8208 SHS.**

United States District Court, S.D. New York.

May 2, 2001.

Lee S. Nuwesra, New York City, for plaintiff.

## *OPINION*

STEIN, District Judge.

Probationary school teacher Anna Rivera filed this action, pursuant to 42 U.S.C. § 1983, against her former school district and other defendants after being terminated for allegedly committing misconduct in an effort to raise her pupils' standardized test scores. Rivera accuses defendants of violating her due process rights by terminating her without a meaningful hearing and violating her First Amendment rights by terminating her in retaliation for filing a notice of claim against other New York employees. The Board of Education moves to dismiss all claims pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.

For the reasons set forth below, the Court finds that: (1) Rivera has no property interest in her job which would entitle her to due process rights; (2) Rivera does have a liberty interest in clearing her name from the stigma of accusations of dishonesty which entitles her to due process; (3) New York State's article 78 proceeding provides an adequate mechanism for protecting Rivera's liberty interest; (4) Rivera has not alleged sufficient facts to establish a causal connection between her filing of a notice of claim and her dismissal from her probationary teaching position. Accordingly, defendants' motion is granted

with prejudice with respect to Rivera's due process claims and is granted without prejudice with respect to her First Amendment claim.

## I. BACKGROUND

Anna Rivera had been teaching in New York elementary schools since 1989 as a probationary employee.[1] In December of 1999, the New York City Special Commissioner of Investigation issued a report entitled "Cheating the Children: Educator Misconduct on Standardized Tests." (hereinafter, "the Report"). The Report alleged that educators in the New York City public school system used a variety of inappropriate means to raise their students' scores on standardized tests. Specifically, it alleged that Rivera was present while a "cheat sheet" was prepared the day before the citywide reading and math tests were given to all third graders in 1995. Although Rivera denies cheating, the Report claims that interviews with Rivera's students establish that Rivera did in fact cheat on that test. (Ex. 4 to Order to Show Cause ("OTSC").) Shortly after the Report was issued and published in the media, Rivera was reassigned to non-teaching duties in another school and summoned to a Community School District Nine disciplinary hearing.

At the hearing, Rivera was not permitted to be represented by her attorney; however, she was represented by the teacher's union. Rivera denied all of the allegations against her. On December 20, 1999, the school district found that Rivera had violated Board of Education policies by: (1) cheating during the 1995 citywide standardized tests and (2) failing to report to her supervisors that "cheat sheets," which were to be used by cooperating staff to assist students during the standardized tests, were prepared in her presence.

(Compl. ¶ 27, Ex. 6 to OTSC at 2.) As a result of this finding, "a strong letter of reprimand" was placed in Rivera's file and her principal was instructed to rate Rivera's annual performance for the period covering September 1999 to June 2000 as "unsatisfactory."

In February of 2000, Rivera filed a notice of claim against the City of New York, the Special Commissioner of Investigation, and two of the Special Commissioner's investigators for defamation and violation of her civil rights. In August of 2000, the Special Commissioner of Investigation issued a Supplementary Report accusing Rivera of assisting students during the 1999 citywide standardized reading test, pressuring other teachers to do the same, and attempting to strike another teacher. (Compl. 31, Ex. 8 to OTSC.) Rivera was subsequently notified to attend another disciplinary meeting.

In response, her attorney wrote to the Director of Operations for the school district objecting to the hearing and stating that, "this new allegation by [the Special Commissioner] is viewed as retaliatory conduct in violation of Ms. Rivera's Civil Rights, for her lodging a complaint against him and others with the New York City Comptroller's Office." (Compl. ¶ 34, Ex. 9 to OTSC.)

At the hearing, Rivera again had union representation but not her own attorney. The school district again credited the charges in the Supplemental Report over Rivera's denials. A few days later, the superintendent of Community School District Nine informed her that her "Certification of Probation" had been denied, meaning she no longer was able to teach in District Nine. (Compl. ¶ 37, Ex. 10 to OTSC.) Rivera subsequently filed this action.

---

1. Unless otherwise noted, the facts are taken from the complaint.

## II. DISCUSSION

### A. Standard of Review

In reviewing a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), a court merely assesses the legal feasibility of the complaint, and does not weigh the evidence that may be offered at trial. *Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir.1998); *Geisler v. Petrocelli,* 616 F.2d 636, 639 (2d Cir.1980). All factual allegations in the complaint must be accepted as true, and the complaint must be viewed in the light most favorable to the plaintiff. *LaBounty v. Adler,* 933 F.2d 121, 123 (2d Cir.1991); *Bayer Corp. v. Smithkline Beecham PLC,* 1996 WL 34164 (S.D.N.Y. Jan.29, 1996). Although a court is limited to the facts stated in the complaint, for purposes of a Rule 12(b)(6) motion the complaint includes any documents attached as exhibits and any documents incorporated by reference. *See Paulemon v. Tobin,* 30 F.3d 307, 308–09 (2d Cir.1994); *Cortec Industries, Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir.1991), cert. denied, 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992). A motion to dismiss should not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Walker v. City of N.Y.,* 974 F.2d 293, 298 (2d Cir.1992) (quoting *Ricciuti v. N.Y. City Transit Auth.,* 941 F.2d 119, 123 (2d Cir.1991)).

### B. Due Process

█ In order to allege a violation of due process rights pursuant to 42 U.S.C. § 1983 a plaintiff must first establish that she has suffered a deprivation of a constitutionally protected liberty interest or property interest. *See Board of Regents v. Roth,* 408 U.S. 564, 570–71, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) (holding limited by *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976)); *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); *Finley v. Giacobbe,* 79 F.3d 1285, 1296 (2d Cir.1996); *Federico v. Board of Educ.,* 955 F.Supp. 194, 198–99 (S.D.N.Y.1997). If a protected interest is identified, the plaintiff must then show that she was deprived of that interest without due process. *See Narumanchi v. Board of Trustees,* 850 F.2d 70, 72 (1988). "The second step of the analysis thus asks what process was due to the plaintiff, and inquires whether that constitutional minimum was provided." *Id.*

#### 1. Rivera Has No Property Interest In Her Probationary Position

█ To establish a property interest, a plaintiff must have "more than an abstract need or desire for [the property], she must, instead, have a legitimate claim of entitlement to it under state or federal law in order to state a § 1983 claim." *Finley,* 79 F.3d at 1296 (citing *Roth,* 408 U.S. at 577, 92 S.Ct. 2701). "Where state law defines an employment position as probationary, the employee lacks a legal claim of entitlement and therefore lacks a property interest in the expectation of continued employment." *Jannsen v. Condo,* 101 F.3d 14, 16 (2d Cir.1996); *see also Donato v. Plainview–Old Bethpage Central Sch. Dist.,* 96 F.3d 623, 629–30 (2d Cir.1996).

█ Under New York law, " 'it is well settled that a probationary employee, unlike a permanent employee, has no property rights in [her] position and may be lawfully discharged without a hearing and without any stated specific reason.' " *Finley,* 79 F.3d at 1297 (quoting *Meyers v. City of New York,* 208 A.D.2d 258, 262, 622 N.Y.S.2d 529, 532 (2d Dep't 1995)); *see also Venes v. Community School Board of Dist. 26,* 43 N.Y.2d 520, 525, 402 N.Y.S.2d 807, 810, 373 N.E.2d 987 (1978). "Where there is no property interest in the employment, there can be no property inter-

est in the procedures that follow from the employment." *Jannsen*, 101 F.3d at 16; *Donato*, 96 F.3d at 629–30 (finding no property interest in notification requirements of New York Education Law § 3031 where employment was probationary). Because Rivera was merely a probationary employee—albeit for ten years—she has no property interest in her position.

## 2. Rivera Has a Liberty Interest

 "A liberty interest is implicated where defamatory statements, made in connection with a probationary employee's termination, denigrate the employee's competence as a professional and impugn the employee's professional reputation in such a fashion as to effectively put a significant roadblock in that employee's continued ability to practice...her profession." *Jannsen*, 101 F.3d at 16; *see also Donato*, 96 F.3d at 630–31; *O'Neill v. City of Auburn*, 23 F.3d 685, 692 (2d Cir.1994). "When a state fires an employee and publicly charges that she acted dishonestly or immorally, due process guarantees the employee an opportunity to defend her good name, reputation, honor, or integrity." *Donato*, 96 F.3d at 630.

 In this case, Rivera was terminated because the superintendent of Community School District Nine concluded that Rivera cheated on standardized tests, pressured other teachers into cheating, and attempted to assault another teacher for refusing to cooperate in the cheating scheme. The allegations were disseminated to the public and repeated in letters to Rivera. Rivera vehemently denied these accusations at both disciplinary meetings. Because these accusations impugn Rivera's honesty, she has a liberty interest that is protected by the Due Process Clause. *See, e.g., O'Neill*, 23 F.3d at 693.

## 3. What Process is Due

 Having determined that Rivera has a protected liberty interest, the next inquiry is whether she was deprived of due process in her effort to protect that interest. The type of process due depends upon whether the alleged violation was caused by "established state procedures" or by "random, unauthorized acts by state employees." *Hellenic American Neighborhood Action Committee v. City of New York (HANAC)*, 101 F.3d 877, 880 (1996) (citing *Hudson v. Palmer*, 468 U.S. 517, 532, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) and *Parratt v. Taylor*, 451 U.S. 527, 541, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)). Specifically, when a state employee intentionally deprives an individual of property or liberty through a random, unauthorized act, the Due Process Clause of the Fourteenth Amendment is not violated "so long as the state provides a meaningful postdeprivation remedy." *HANAC*, 101 F.3d at 880. However, when the state's deprivation of an individual's property or liberty "occurs in the more structured environment of established state procedures," rather than through random acts of state employees, "the availability of post deprivation procedures, will not, ipso facto, satisfy due process." *Id.*

The United States Supreme Court's different treatment of the two situations rests on pragmatic considerations. *See Hudson*, 468 U.S. at 531–33, 104 S.Ct. 3194. When a deprivation occurs because of a random, arbitrary act by a state employee " '[i]t is difficult to conceive of how the State could provide a meaningful hearing before the deprivation takes place.' " *Id.* (quoting *Parratt*, 451 U.S. at 541, 101 S.Ct. 1908). Furthermore, "[that] an individual employee himself is able to foresee a deprivation is simply of no consequence. The controlling inquiry is solely whether the state is in a position to provide for predeprivation

process." *Hudson,* 468 U.S. at 534, 104 S.Ct. 3194; *see also HANAC,* 101 F.3d at 880.

Although Rivera contends that the violation of her liberty interest stemmed from established state procedures, she cites no particular rule, provision or statute that violates due process. Indeed, New York's general procedures for terminating probationary teachers have already been upheld against due process challenges by both federal and New York state courts. *See Donato,* 96 F.3d at 629 (upholding against due process challenge N.Y. Educ. Law § 3031, which articulates procedures to follow when a superintendent recommends to the board of education that a probationary employee be denied tenure or terminated); *Narumanchi,* 850 F.2d at 72 ("[T]he grievance procedures contained in [a university teacher's collective bargaining] agreement provided whatever process [the teacher] was due."); *James v. Board of Educ.,* 37 N.Y.2d 891, 892, 378 N.Y.S.2d 371, 371, 340 N.E.2d 735 (1975) ("A board of education has an unfettered right to terminate the employment of a teacher during his probationary period unless the teacher establishes that the board terminated for a constitutionally impermissible purpose or in violation of a statutory proscription."); *cf. Venes,* 43 N.Y.2d at 525, 402 N.Y.S.2d at 810, 373 N.E.2d 987 (upholding N.Y. Educ. Law § 2573, which grants a school board broad authority to dismiss a probationary employee).

█ In this case, the particular finding that gives rise to the protected interest—that Rivera cheated and attempted to assault a fellow teacher—could not possibly be anticipated before it occurred by lawmakers and administrators who formulate procedures. The claim, therefore, is based on a random, unauthorized act, and not a state established procedure. *See, e.g., Giglio v. Dunn,* 732 F.2d 1133, 1135 (2d Cir.1984); *Federico,* 955 F.Supp. at 200–01.

█ Because the alleged deprivation of a liberty interest was the result of a random, unauthorized act, Rivera's claim can survive only if New York does not provide adequate postdeprivation procedures. *See HANAC,* 101 F.3d at 881. However, New York's Article 78 proceeding has been held to be an adequate postdeprivation remedy. *See Id.; Federico,* 955 F.Supp. at 201–02. Article 78 of the New York Civil Practice Law and Rules provides both a hearing and a means of redress for petitioners. An Article 78 petitioner is permitted to submit affidavits and other written proof of her claim, and where a triable issue of fact is raised, the petitioner may obtain a trial. *See HANAC,* 101 F.3d at 881; *Federico,* 955 F.Supp. at 202. Moreover, "an Article 78 proceeding is adequate for due process purposes even though the petitioner may not be able to recover the same relief that [she] could in a § 1983 suit." *HANAC,* 101 F.3d at 881; *Federico,* 955 F.Supp. at 202.

Rivera's claim that the school district failed to provide her with a meaningful hearing before she was terminated is inapposite. Rivera can seek the redress she desires—an opportunity to clear her name—through an Article 78 proceeding. *See Swinton v. Safir,* 93 N.Y.2d 758, 766, 697 N.Y.S.2d 869, 873, 720 N.E.2d 89. Because New York provides Rivera with adequate due process, there is no constitutional violation to be redressed through a § 1983 suit. *HANAC,* 101 F.3d at 882. Consequently, her due process claims are dismissed with prejudice.

### C. First Amendment

█ To survive a motion to dismiss, "a plaintiff asserting First Amendment retaliation claims must advance non-conclusory allegations establishing: (1) that the

speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Dawes v. Walker,* 239 F.3d 489, 492 (2d Cir.2001); *see also Posr v. Court Officer Shield # 207,* 180 F.3d 409, 418 (2d Cir.1999); *Velasquez v. Goldwater Memorial Hospital,* 88 F.Supp.2d 257, 264 (S.D.N.Y.2000). "In particular, the causal connection must be sufficient to warrant an inference that the protected speech was a substantial motivating factor in the adverse employment action." *Blum v. Schlegel,* 18 F.3d 1005, 1010 (2d Cir.1994); *see also Dawes,* 239 F.3d at 492; *Velasquez,* 88 F.Supp.2d at 265. At this stage in the proceedings, a "reasonable inference" is all that is required. *Posr,* 180 F.3d at 418.

■■■ Defendants contend that there was no "causal connection" between Rivera filing a notice of claim against New York City, the Special Commissioner of Investigation, and certain of the individual investigators on one hand and the dismissal of Rivera on the other. Their argument has merit. Rivera's notice of claim was not filed against any of the defendants in this action, and she has not alleged any special relationship between those named in the notice of claim and the defendants in this action which would motivate the defendants in this action to retaliate against Rivera due to the filing of the notice of claim.

Furthermore, Community School District Nine had already held one disciplinary meeting and had scheduled another before even learning from Rivera's attorney that Rivera had filed a notice of claim against the Special Commissioner of Investigation and others. This strongly suggests that the school district's actions were based upon the allegations in the Report and Supplemental Report rather than in retaliation for Rivera filing a notice of claim against others.

The fact that the Special Commissioner and his investigators may have acted in retaliation against Rivera by filing a Supplemental Report accusing her of more egregious acts is irrelevant to this lawsuit because the Commissioner and his investigators are not the defendants. Because Rivera does not allege facts which would support a reasonable inference that her First Amendment activities were a "substantial motivating factor" in her termination, the claim is dismissed with leave to replead facts to support such an inference if she so chooses. *See Dawes,* 239 F.3d at 492; *Kalb v. Wood,* 38 F.Supp.2d 260, 268 (S.D.N.Y.1999); *Quinn v. Nassau County Police Department,* 53 F.Supp.2d 347, 362 (E.D.N.Y.1999).

## III. CONCLUSION

In sum, Rivera has not suffered a deprivation of property or liberty without due process; consequently, defendants' motion to dismiss these claims is granted with prejudice. Rivera has not pled sufficient facts to show that her dismissal from her teaching position was substantially motivated by her filing a notice of claim against other New York employees; therefore, defendant's motion to dismiss this claim is granted as well. Nevertheless, the motion is granted with leave for Rivera to plead within thirty days sufficient facts to establish that causal connection, if she is able.