**ESTATE OF Todd A. SMITH, et al.**

v.

**TOWN OF WEST HARTFORD, et al.**

**No. 3:00CV2299(AHN).**

United States District Court,
D. Connecticut.

Feb. 15, 2002.

James S. Brewer, Erin I. O'Neil–Baker, West Hartford, CT, Otto P. Witt, Bloomfield, CT, for Defendants.

Carl R. Ficks, Jr., Brian P. Leaming, Halloran & Sage, Hartford, CT, Patrick G. Alair, Corporation Counsel's Office, West Hartford, CT, Richard R. Brown, Robert T. Rimmer, Brown, Paindiris & Scott, Hartsford, CT, for Defendants.

### RULING ON DEFENDANTS' MOTIONS TO DISMISS

NEVAS, District Judge.

This action arises from the tragic and untimely death of Todd A. Smith

("Smith"), a West Hartford police officer who committed suicide on December 3, 1998 with his service revolver. The plaintiffs are Smith's Estate and Smith's wife, Jane Crowley–Smith ("Crowley–Smith"), both in her personal capacity and on behalf of Smith's surviving children, Jessica and Ryan Smith (the "minor plaintiffs").[1] The defendants are the Town of West Hartford ("the Town") and several of its employees, namely—Chief of Police Strillacci ("Chief Strillacci"), Lieutenant Jack Casey ("Lieutenant Casey"), Lieutenant Lori Coppinger ("Lieutenant Coppinger"), Sergeant Christopher St. Jacques ("Sergeant St. Jacques") and Officer Paula Senyk ("Officer Senyk") (collectively, "the individual defendants.").

The plaintiffs bring this action seeking money damages and other relief pursuant to 42 U.S.C. § 1983, claiming that the Town and its employees failed to take appropriate action to prevent Smith's death. This failure to properly intervene, the plaintiffs claim, violated Smith's rights to substantive due process under the Fourteenth Amendment and was in retaliation for Smith's participation in union activities protected by the First Amendment. The plaintiffs also assert several causes of action under state law, including: negligence; wrongful death; loss of spousal consortium; loss of parental consortium;

and intentional infliction of emotional distress.

Currently pending are the Town's Motion to Dismiss [doc. # 16] and the individual defendants' Motion to Dismiss [doc. # 18]. For the following reasons, both motions are GRANTED.[2]

## BACKGROUND

The following facts, taken from the plaintiffs' complaint, are assumed to be true for the purposes of the defendants' motions to dismiss. *See, e.g., Leeds v. Meltz,* 85 F.3d 51, 53 (2d Cir.1996).

On December 3, 1998, the decedent, Smith, a police officer with the Town of West Hartford, committed suicide by placing a service-issued firearm to his head and pulling the trigger. Compl., ¶ 7.

The complaint alleges that, prior to Smith's death, he was placed in the West Hartford Police Department's Employee Assistance Program ("EAP") in order to address his declining mental and emotional state. Compl. ¶ 8. The plaintiffs allege that the EAP was defective because the defendants did not refer Smith to a professional, but simply had him consult with his peers. Compl. ¶ 9. The plaintiffs further allege that Officer Senyk, while acting as Smith's EAP counselor, initiated an inappropriate sexual relationship with Smith

---

1. Although not identified in the caption, the decedent himself is referenced as a plaintiff throughout the Complaint. Upon death, however, the decedent is no longer a "person" under the Constitution or 42 U.S.C. § 1983. *See, e.g., Whitehurst v. Wright,* 592 F.2d 834, 840 (5th Cir.1979). The decedent's claim can nevertheless survive him if state law creates a right of survival. *Barrett v. United States,* 689 F.2d 324, 331 (2d Cir.1982). Connecticut law requires the executor or administrator to bring a claim arising from an individual's death. *See* Conn. Gen.Stat. § 52–555 (1991); *see also* Conn. Gen.Stat. § 52–599 (1987). Thus, the appropriate party to assert any

claim arising from the alleged deprivation of the decedent's constitutional rights is the administrator or executor of his estate. The decedent, however, is not a person under § 1983 or state law and cannot be considered a plaintiff.

2. Specifically, the federal constitutional claims under § 1983 are dismissed. The court, however, declines to exercise supplemental jurisdiction over the state law claims and, accordingly, those claims are dismissed without prejudice to their pursuit in state court. *See, e.g., Hanrahan v. City of Norwich,* 959 F.Supp. 118, 120 n. 2 (D.Conn.1997).

which led to marital problems for him. Compl. ¶ 37(a).

The plaintiffs claim that the defendants knew or should have known that Smith was suffering from severe depression for the following reasons:

(1) During the six weeks prior to Smith's suicide, Smith had lost thirty-five pounds;

(2) During the six weeks prior to Smith's suicide, he repeatedly called in sick for work, arrived late for work, or left work early;

(3) Prior to this period, Smith's attendance record was impeccable;

(4) Smith's erratic and emotional behavior at home led his wife to phone Lieutenant Coppinger and state that Smith had told her that he was going to attach one end of a vacuum cleaner hose to the tailpipe of his vehicle and stick the other end of the vacuum hose inside the window of the vehicle and use it to asphyxiate himself;

(5) Coppinger failed to notify her superiors that Smith was contemplating suicide;

(6) Lieutenant Casey and Sergeant St. Jacques had noticed a change in Smith's behavior, spoke together about him, and spoke to Smith on several occasions regarding his emotional state and whether he needed assistance;

(7) The defendants' concerns were serious enough that they questioned Smith directly whether he was contemplating suicide;

(8) The defendants failed to refer Smith to a professional counselor although they asked him whether he was suicidal; and

(9) The defendants issued warnings to Smith regarding his performance.

Compl. ¶¶ 12(a)-(I).

The plaintiffs allege that Chief Strillacci, Lt. Coppinger, Lt. Casey and Sgt. St. Jacques all had the authority, both inherently as administrators for the West Hartford Police Department and as expressly authorized by the collective bargaining agreement, to order Smith to see a counselor, remove his firearm, assign him to desk duty, or take any other action necessary to ensure that Smith would not be a danger to himself. Compl. ¶ 13.

The plaintiffs allege that, despite Smith's protestations to the contrary, the defendants knew that he suffered from serious emotional and mental problems, that these problems had manifested themselves at least once in a physical heart condition that required hospitalization, and that Smith claimed to be seeking counseling outside the department. Compl. ¶ 18.

The plaintiffs allege that the defendants were on notice of Smith's mental and emotional state because his condition was of such severity that they expressly questioned Smith whether he was contemplating suicide. Compl. ¶ 19. The plaintiffs maintain that Smith required the services of a counselor, a reassignment of duties and/or removal of his firearm in order to protect Smith from himself. Compl. ¶ 20.

The plaintiffs allege that the defendants' conduct caused Smith's emotional and mental distress to continue unabated. Compl. ¶ 17. They allege that the defendants knew, or should have known, of the severity of Smith's mental and emotional state, and should have prevented Smith from performing duties that required the use of his firearm and/or increased his stress. Compl. ¶ 25. The plaintiffs maintain that the defendants' actions promoted an increasingly difficult working environment for Smith and were willful, intentional and done in spite of their actual knowl-

edge or in reckless disregard of Smith's rights. Compl. ¶¶ 22, 26.

The plaintiffs claim that, due to the defendants' conduct, Smith ultimately drove himself to a secluded area of West Hartford and used his firearm to commit suicide with a single gunshot wound to his head. Compl. ¶ 21.

The plaintiffs assert seven causes of action. In the first count of the complaint, the Estate alleges a § 1983 claim against the individual defendants claiming that their actions violated two of Smith's constitutional rights. First, the Estate alleges that the defendants' failure to properly intervene violated Smith's substantive due process rights under the Fourteenth Amendment to the Constitution. Compl. ¶ 14. Second, the Estate alleges a First Amendment retaliation claim. Specifically, the Estate claims that, at the time of his death, Smith was union president and had been active in union activities. Compl. ¶ 10. The Estate maintains that the defendants' failure to follow proper procedure in light of Smith's mental and emotional state was in retaliation for his position as union president and for Smith's seeking redress through the collective bargaining agreement on behalf of his fellow officers. Compl. ¶ 15. The Estate maintains that the acts of the defendants constituted a denial of Smith's First Amendment rights to free speech and association and to seek redress from the government without retaliation. Compl. ¶ 16.

In the second count, the Estate advances a constitutional claim against West Hartford alleging that the Town: (1) failed or refused to promulgate and enforce appropriate guidelines, regulations, policies, practices or procedures regarding personnel actions; (2) failed or refused to adequately supervise Smith's supervisors in the performance of their duties and conduct towards employees; and/or (3) failed or refused to take appropriate investigatory, supervisory and/or disciplinary action against the police supervisors with regard to the conduct alleged in the complaint. Compl. ¶ 30.

In count three, the plaintiffs allege negligence against all the defendants. The plaintiffs claim that the defendants breached a duty when they failed to refer Smith to a professional counselor; failed to confiscate his firearm; failed to assign him to desk duty; and failed to adequately address the suicide warning that Crowley–Smith relayed. The plaintiffs also claim that the defendants were negligent because Officer Senyk initiated an inappropriate relationship with Smith while acting as his EAP counselor which, in turn, led to marital problems for Smith and worsened his personal situation. Compl. ¶ 37.[3]

In the fourth count, the Estate advances a wrongful death claim against all the defendants. The Estate claims that the defendants were careless or negligent because they failed to address the suicide warning reported by Crowley–Smith; failed to refer Smith to a professional counselor; failed to remove Smith's firearm from his possession; and failed to assign him to desk duty. Compl. ¶ 41.

In the final three counts of the complaint, the plaintiffs assert claims for loss of consortium and intentional infliction of emotional distress. Specifically, count five

---

**3.** At oral argument, counsel for the plaintiffs maintained that the third count of the complaint is intended to be a cause of action for the failure of the defendants to provide a safe working environment. *See also* Pl.'s Opp. to Defs.' Mot. to Dismiss at 13–14. The plaintiffs claim that this cause of action is brought pursuant to Conn. Gen.Stat. § 31–49 and certain principles set forth in *Parsons v. United Technologies Corp.*, 243 Conn. 66, 700 A.2d 655 (1997). Because the court declines to exercise supplemental jurisdiction, it does not address the question whether § 31–49 provides an independent cause of action.

sets forth a claim for loss of spousal consortium by Crowley–Smith; count six asserts a claim for loss of parental consortium by the minor plaintiffs Jessica and Ryan Smith; and count seven advances a claim of intentional infliction of emotional distress by Crowley–Smith.[4]

## STANDARD

A motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) should be granted only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). The function of a motion to dismiss is "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." *Ryder Energy Dist. Corp. v. Merrill Lynch Commodities, Inc.,* 748 F.2d 774, 779 (2d Cir.1984) (quoting *Geisler v. Petrocelli,* 616 F.2d 636, 639 (2d Cir.1980)). The motion must therefore be decided solely on the facts alleged. *See Goldman v. Belden,* 754 F.2d 1059, 1065 (2d Cir.1985).

When deciding a motion to dismiss for failure to state a claim on which relief can be granted, the court must accept the material facts alleged in the complaint as true, and all reasonable inferences are to be drawn and viewed in a light most favorable to the plaintiffs. *See, e.g., Leeds,* 85

F.3d at 53; *Staron v. McDonald's Corp.,* 51 F.3d 353, 355 (2d Cir.1995); *Skeete v. IVF America, Inc.,* 972 F.Supp. 206, 207 (S.D.N.Y.1997). The court "must not dismiss the action 'unless it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [the plaintiffs'] claim which would entitle [the plaintiffs] to relief.'" *Cohen v. Koenig,* 25 F.3d 1168, 1172 (2d Cir.1994). The issue is not whether the plaintiffs will prevail, but whether they should have the opportunity to prove their claims. *See Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

## DISCUSSION

The plaintiffs claim that the Town and its employees failed to take appropriate action to prevent Smith's death. The plaintiffs maintain that the defendants' failure to properly intervene violated Smith's rights to substantive due process under the Fourteenth Amendment and was in retaliation for Smith's participation in union activities protected by the First Amendment.

■ The defendants argue that, in the absence of some custodial relationship, the due process clause imposes no duty on the state to protect an individual against himself. The defendants further argue that the plaintiffs have failed to allege sufficient facts to state a First Amendment retaliation claim.[5]

---

4. In their memorandum in opposition, the plaintiffs withdrew the sixth count of the complaint alleging loss of parental consortium by the minor plaintiffs. *See* Pl.'s Opp. to Defs.' Mot. to Dismiss at 16. The withdrawal of this count was confirmed at oral argument.

5. A constitutional violation by the individual defendants is required in order to sustain a claim against the municipality. *See, e.g., Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986); *Dodd v. Norwich,* 827 F.2d 1, 8 (2d Cir.1987); *see also Roe v. Humke,* 128 F.3d 1213, 1216 (8th Cir.

1997) (in the absence of a constitutional violation of the individual police officer, no liability could be attributed to the police chief); *Evans v. Avery,* 100 F.3d 1033, 1040 (1st Cir.1996), *cert. denied,* 520 U.S. 1210, 117 S.Ct. 1693, 137 L.Ed.2d 820 (1997) (no municipal liability where there was no underlying constitutional violation in a police pursuit case); *Hinkle v. City of Clarksburg,* 81 F.3d 416, 420 (4th Cir.1996) (no liability as to officer involved in shooting made it unnecessary to decide claims against the City and supervisor); *Brodnicki v. City of Omaha,* 75 F.3d 1261, 1266 (8th Cir.), *cert. denied,* 519

### 1. Substantive Due Process

■ The defendants argue that they had no constitutional obligation under the due process clause to prevent Smith's suicide. The court agrees.

The complaint alleges that the defendants deprived Smith's right to substantive due process when they failed to take sufficient remedial action to prevent his suicide. Under the circumstances presented here, however, the Due Process Clause mandates no such obligation.

In *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), the Supreme Court held that the Due Process Clause does not impose a duty on state officials to protect an individual against a risk of violence unless there is a "special relationship" between the state and the individual, such as the relationship that occurs when a state takes a person into custody.

In *DeShaney*, the petitioner sought damages from the Winnebago County Department of Social Services for its alleged failure to intervene when confronted with evidence that the petitioner's minor child was suffering repeated abuse by his father. Notwithstanding overwhelming evidence that the child was repeatedly subjected to severe abuse, the Court found that the Department had no constitutional obligation to act to prevent the child from harm. The Court stated:

> Nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security.

*Id.* at 195, 109 S.Ct. 998. The Court explained that "the Due Process Clause of the Fourteenth Amendment was intended to prevent government from abusing its power, or employing it as an instrument of oppression ... Its purpose was to protect the people from the State, not to ensure that the State protected them from each other." *Id.* at 196, 109 S.Ct. 998. The Court reasoned:

> If the Due Process Clause does not require the State to provide its citizens with particular protective services, it follows that the State cannot be held liable under the Clause for injuries that could have been averted had it chosen to provide them. As a general matter, then, we conclude that a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause.

*Id.* at 196–97, 109 S.Ct. 998.

Applying these principles here, the plaintiffs have failed to state a cause of action for a due process violation because the complaint fails to allege the type of special or custodial relationship that *DeShaney* requires. The plaintiffs make no claim that Smith was in custody. Rather, they expressly allege that Smith "drove himself to a secluded area of West Hartford and used his firearm to commit suicide with a single gunshot wound to his

U.S. 867, 117 S.Ct. 179, 136 L.Ed.2d 119 (1996) (Given no constitutional violation by officer for unlawful arrest, there could be no liability for City's failure to train him); *Martinez v. Colon*, 54 F.3d 980, 990 (1st Cir., 1995) (No supervisory liability claim where the individual officers had no constitutional obligation to prevent private violence under the substantive due process clause). Because

the threshold inquiry for determining liability with respect to the Town also turns on whether the plaintiffs have stated a viable claim against the individual officers, and for ease of reference, the court addresses the plaintiffs' substantive due process and First Amendment retaliation claims with respect to all defendants collectively.

head." Compl. ¶ 21. The Due Process Clause, however, provides no remedy to the plaintiffs under these circumstances. As the Supreme Court explained in *De-Shaney*:

> The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from limitation which it has imposed on his freedom to act on his own behalf ... in the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which is the deprivation of liberty, triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interest against harms inflicted by other means.

*Id.* at 200, 109 S.Ct. 998. Simply put, in the absence of any restraint on Smith's liberty, there was no constitutional obligation under the Due Process Clause for the defendants to protect Smith from himself. *See id.*

The plaintiffs' arguments to the contrary are not persuasive. The plaintiffs, citing *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) and *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), argue that they have alleged sufficient facts to demonstrate a substantive due process violation, claiming that the defendants exhibited deliberate indifference by failing to prevent Smith's suicide. The plaintiffs' reliance on *Farmer* and *Daniels,* however, is misplaced—in both cases the petitioners were prisoners in custody of the state. The plaintiffs here make no claim that Smith was in custody or that he otherwise had a special relationship with the State as required by *DeShaney.*

The plaintiffs' interpretation of *Collins v. City of Harker Heights,* 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992) is also incorrect. The plaintiffs argue that *Collins* included the proposition that the assignment of an employee to a dangerous working condition with malicious intent is sufficient by itself to state a cause of action for a violation of substantive due process. *Collins,* however, did not so hold.

In *Collins,* the plaintiff's decedent died of asphyxia when he entered a manhole to unstop a sewer line. The plaintiff sued the decedent's employer, the City of Harker Heights, alleging that the city violated the decedent's due process rights by failing to provide a safe work environment and by failing to train or warn its employees about known work hazards. In rejecting that claim, the Court held that the plaintiff's complaint had failed to allege a constitutional violation because neither the text nor the history of the Due Process Clause supported the petitioner's unprecedented claim that the Clause imposes an independent duty upon municipalities to provide certain minimal levels of safety and security in the workplace. *Id.* at 126–30, 112 S.Ct. 1061. The Court, citing *De-Shaney,* reasoned that the Clause guarantees due process in connection with a *deprivation* of liberty by the State.

The plaintiffs' reliance on the Court's reference in *Collins* to "potentially meritorious claims" misses the mark. In that passage the Court was simply rejecting the Court of Appeals' reading of § 1983 as requiring an abuse of governmental power separate and apart from the proof of a constitutional violation. In rejecting such a requirement, the Court stated:

> a logical application of the holding might also bar potentially meritorious claims by employees if, for example, the city had given an employee a particularly dangerous assignment in retaliation for

a political speech ... or because of his or her gender.

*Id.* at 120, 112 S.Ct. 1061 (citations omitted). That passage does not, as the plaintiffs claim, suggest that a claim of malicious assignment, without more, states a substantive due process violation. To the contrary, the Court was making reference to a First Amendment retaliation claim or an Equal Protection claim, and went on to reject the notion that a "governmental employer's duty to provide its employees with a safe working environment is a substantive component of the Due Process Clause." *Id.* at 126, 112 S.Ct. 1061.

The plaintiffs' efforts to distinguish *DeShaney* and its progeny are also unavailing. The plaintiffs argue that *DeShaney* is distinguishable because DeShaney was injured by a third party and the defendants' actions in that case were not willful, deliberate or malicious. The Court in *DeShaney* however, held that the "state's failure to protect an individual against *private* violence simply does not constitute a violation of the Due Process Clause." 498 U.S. at 197, 111 S.Ct. 604 (emphasis added). Nowhere did the Court limit its holding to private violence committed solely by third persons. *Id.; see also Archie v. City of Racine,* 847 F.2d 1211, 1221 (7th Cir.1988) ("The rule that the government need not protect its residents from private predators *or their own misfortune* is an implication of the language and structure of the Due Process Clause.") (emphasis added). The plaintiffs' argument that *DeShaney* did not impose liability because there were no allegations or findings that the defendants' conduct was willful, deliberate or malicious also rings hollow in light of the Court's express reference to the fact that the defendants "stood by and did nothing when suspicious circumstances dictated a more active role for them." *Id.* at 203, 109 S.Ct. 998.

The plaintiffs' effort to distinguish the analogous case of *Hanrahan v. City of Norwich,* 959 F.Supp. 118 (D.Conn.), *aff'd,* 133 F.3d 907 (2d Cir.1997) is similarly unavailing. In that case, Hanrahan, a Norwich police officer, committed suicide with his service revolver while being questioned about his suspected involvement in a hit and run accident by Norwich Deputy Chief of Police Robert Brautigam ("Brautigam") in Brautigam's office. Hanrahan's father, acting as administrator of his son's estate, brought a civil rights action under 42 U.S.C. § 1983, claiming that Brautigam violated the Due Process Clause of the Fourteenth Amendment by questioning Hanrahan without taking precautions to protect Hanrahan against a risk of self-inflicted harm. The plaintiff also claimed that the Chief of Police and the City of Norwich violated Hanrahan's due process rights by failing to adequately train Brautigam and other officers in suicide prevention. The court granted summary judgment, holding that "[e]ven assuming suicide precautions should have been taken in this case as a matter of prudence, plaintiff's § 1983 claims [did] not warrant a trial because he allege[d] at most only negligence, which does not violate the Due Process Clause." *Id.* at 120.

The plaintiffs argue that *Hanrahan* is distinguishable because the defendants in that case had no notice that the plaintiff was suicidal. *See id.* at 122 ("[T]here is no evidence that Hanrahan threatened to commit suicide or exhibited any signs or symptoms of emotional disturbance that would put [the defendants] on notice of a risk Hanrahan might try to take his own life."). This distinction, however, does not change the fact that the "special relationship" required by *DeShaney* is entirely absent here.

Although the court's holding in *Hanrahan* was based in part on the fact that the defendants had no notice that the decedent

was suicidal, *Hanrahan* does not stand for the proposition that a custodial relationship between the state and the individual is no longer required under those circumstances. Indeed, the court expressly recognized that such a relationship is necessary:

> Whether the "special relationship" required by *DeShaney* existed between Brautigam and Hanrahan appears to be a question of first impression. When Brautigam undertook to question Hanrahan about his suspected involvement in the hit and run accident ... the "process" guaranteed to Hanrahan by the Fourteenth Amendment might have imposed an obligation on Brautigam to satisfy certain minimal standards applicable to custodial interrogation. On the other hand, Brautigam had a right to interview Hanrahan in connection with his employment as a police officer and it is doubtful that a supervisor's interview of a subordinate constitutes a "restraint on personal liberty" within the meaning of that phrase as it was used by the Court in *DeShaney*.

*Id.* at 121–22. The court found it unnecessary to decide the threshold question of a custodial relationship, however, because the plaintiff, having alleged only negligence, had not otherwise set forth a violation of the Due Process Clause:

> In any event, there is no need to decide whether Hanrahan had a "special relationship" with Brautigam within the meaning of *DeShaney* because, even if Hanrahan was in custody during the interview in Brautigam's office, Brautigam is entitled to summary judgment.

*Id.* at 122 (granting summary judgment because "negligent inaction by a custodial official does not violate the Due Process Clause."). Simply put, the court in *Hanrahan* assumed a custodial relationship arguendo; it did not eliminate that threshold requirement. Although the plaintiffs al-

lege that the defendants had notice of Smith's emotional state, they expressly allege that Smith "drove himself to a secluded area of West Hartford and used his firearm to commit suicide with a single gunshot wound to his head." Compl. ¶ 21. Under those circumstances—namely, the absence of any custodial relationship—the plaintiffs have failed to allege a due process violation.

Alternatively, the Town argues that the individual defendants are entitled to qualified immunity because, even if such a constitutional obligation exists, it was not a clearly established right at the time of the decedent's death. The court agrees.

■ Even were the court to assume that the defendants had a constitutional obligation to attempt to prevent Smith's suicide, which it does not, that obligation was not clearly established in December of 1998. There is no decisional law from the U.S. Supreme Court or from this Circuit that would have put the defendants on notice that their inaction under the circumstances presented here was unlawful under the Constitution. Indeed, the weight of authority is to the contrary. *See, e.g., McClary v. O'Hare*, 786 F.2d 83 (2d Cir. 1986) (no due process requirement to provide a safe workplace); *Hanrahan v. City of Norwich*, 959 F.Supp. 118 (D.Conn.), *aff'd*, 133 F.3d 907 (2d Cir.1997)(no constitutional liability for City in failing to train its officers in suicide prevention when one of its police officers shot himself in supervisor's office); *Mroz v. City of Tonawanda*, 999 F.Supp. 436 (W.D.N.Y.1998) (no constitutional violation for officer's failure to recognize the decedent's threat of suicide when he was released from custody and returned home without contacting his parents); *Estate of Rosenbaum v. City of New York*, 975 F.Supp. 206 (E.D.N.Y.1997) (Mayor and Police Commissioner entitled to qualified immunity for claim that they failed to provide adequate police protec-

tion); *Archie v. City of Racine,* 847 F.2d 1211 (7th Cir.1988) (no constitutional deprivation when a 911 dispatcher failed to send an ambulance); *Summar v. Bennett,* 157 F.3d 1054 (6th Cir.1998) (no constitutional deprivation when identity of police informant was disclosed to his would-be murderer when he was told that his identity would not be revealed); *Rutherford v. City of Newport News,* 919 F.Supp. 885 (E.D.Va.1996), *aff'd,* 107 F.3d 867 (4th Cir. 1997) (no constitutional responsibility of supervisors to protect an undercover police officer who was killed). Thus, even assuming the defendants had a constitutional obligation to attempt to prevent Smith's suicide, such an obligation was not clearly established at the time. Accordingly, for this additional reason, the defendants' motions to dismiss the due process claim are granted.

### 2. *First Amendment Claim*

The defendants argue that the complaint also fails to state a claim for retaliation under the First Amendment. The court agrees.

■ To survive a motion to dismiss, "a plaintiff asserting First Amendment retaliation claims must advance non-conclusory allegations establishing: (1) that the speech or conduct at issue was protected, (2) that the defendant[s] took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Dawes v. Walker,* 239 F.3d 489, 492 (2d Cir.2001); *see also Posr v. Court Officer Shield # 207,* 180 F.3d 409, 418 (2d Cir.

1999); *Rivera v. Comty. Sch. Dist. Nine,* 145 F.Supp.2d 302, 309 (S.D.N.Y.2001); *Velasquez v. Goldwater Mem'l Hosp.,* 88 F.Supp.2d 257, 264 (S.D.N.Y.2000). The causal connection must be sufficient to warrant an inference that the protected speech was a substantial motivating factor in the adverse action. *See Blum v. Schlegel,* 18 F.3d 1005, 1010 (2d Cir.1994); *see also Dawes,* 239 F.3d at 492; *Velasquez,* 88 F.Supp.2d at 265; *Rivera,* 145 F.Supp.2d at 309. At this stage of the proceedings, a "reasonable inference" is all that is required. *Posr,* 180 F.3d at 418. However, "a complaint which alleges retaliation in wholly conclusory terms may safely be dismissed." *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983); *see also Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996) ("A complaint of retaliation that is wholly conclusory can be dismissed on the pleadings alone."); *Gagliardi v. Village of Pawling,* 18 F.3d 188, 195 (2d Cir.1994) ("bald and uncorroborated allegation[s] of retaliation might prove inadequate to withstand a motion to dismiss.").

■ The plaintiffs here have failed to plead the requisite nexus between the exercise of Smith's First Amendment rights and subsequent retaliatory conduct by the defendants. The complaint merely alleges that Smith was the union president, was active in union activities and that the defendants' failure to take appropriate action was in retaliation for his position as union president and for seeking redress through the collective bargaining agreement on behalf of his fellow officers. Compl. ¶¶ 10, 15.[6] This is insufficient. The plaintiffs

---

**6.** Specifically, with respect to the plaintiffs' First Amendment retaliation claim, the complaint alleges:

10. At the time of his death, plaintiff Smith was the union President and had been active in union activities.

15. The failure to follow proper procedure in light of plaintiff Smith's obvious mental and emotional state was in retaliation for

his position as union president and for seeking redress through the collective bargaining agreement on behalf of his fellow officers.

16. The acts of the defendants, under color of law, by virtue of their authority as Police supervisors and public servants of the Town of West Hartford, herein alleged constitute a denial to plaintiff Smith of his

have not—and, at oral argument, could not—allege any connection between Smith's union activities and the defendants' alleged failure to take appropriate action to prevent his suicide. The complaint, for example, sets forth no allegations with respect to Smith's union activity, when he engaged in that activity or how the defendants retaliated against him in response to that activity, except to state, in a conclusory fashion, that the "acts of the defendants" amounted to a denial of Smith's right to free speech and association and to seek redress from the government without retaliation. Accordingly, the plaintiffs have not plead a causal connection sufficient to warrant a reasonable inference that Smith's union activities were a substantial motivating factor in the defendants' alleged failure to prevent his suicide.[7]

Because the plaintiffs are unable to plead a causal connection sufficient to warrant a reasonable inference that Smith's union activities were a substantial motivating factor in the defendants' alleged failure to prevent his suicide, the defendants' motions to dismiss the plaintiffs' First Amendment retaliation claim are also granted.

### CONCLUSION

The allegations set forth in the plaintiffs' complaint, while undeniably tragic, simply do not state a constitutional violation. For the reasons stated above, the Town's Mo-

tion to Dismiss [doc. # 16] and the individual defendants' Motion to Dismiss [doc. # 18] are GRANTED and the federal constitutional claims under § 1983 are dismissed. The court, however, declines to exercise supplemental jurisdiction over the state law claims and, accordingly, those claims are dismissed without prejudice to their pursuit in state court. *See, e.g., Hanrahan,* 959 F.Supp. at 120 n. 2. The clerk is instructed to close the file.

---

rights to free speech and association and to seek redress from the government without retaliation as guaranteed to him by the First Amendment to the United States Constitution. Compl. ¶¶ 10, 15–16.

7. To hold otherwise would also seem to subvert the holding in *DeShaney.* The adverse action the plaintiffs challenge is the defendants' failure to prevent Smith from the private violence he inflicted upon himself. The Supreme Court has definitively held that

where, as here, the individual was not in custody, there is no constitutional obligation under the Due Process Clause for the state to act to protect an individual against private violence. To accept the plaintiffs' theory for their retaliation claim would be tantamount to holding that the First Amendment creates a constitutional obligation for the State to act in circumstances where the Supreme Court has definitively concluded that the Due Process Clause imposes no such duty. Such a holding would appear to permit an inappropriate end-run around *DeShaney* and its progeny.