Grace **PETERSON–HAGENDORF**, Plaintiff,

v.

The **CITY OF NEW YORK**, et al., Defendant.

13 Civ. 1202 (ILG) (RML)

United States District Court, E.D. New York.

Signed November 30, 2015

Amy Beth Marion, Barket Marion Epstein & Kearon LLP, Garden City, NY, for Plaintiff.

Melissa Wachs, Max Oliver McCann, New York City Law Department, New York, NY, for Defendants.

## MEMORANDUM AND ORDER

GLASSER, Senior United States District Judge:

Plaintiff Grace Peterson–Hagendorf brings this suit, pursuant to 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments of the United States Constitution, and New York law, against the City of New York, the Department of Education, a New York Police Department officer, and several supervisors at a public school in Queens where she was arrested for assaulting a student. Pending before the Court is Defendants' motion for summary judgment on all claims. For the reasons described below, that motion is GRANTED.

## BACKGROUND

On the morning of March 7, 2012, Plaintiff was assigned to substitute teach a first grade class at P.S. 22 while its permanent teacher, Jennifer O'Brien, attended a meeting. During her lesson, Plaintiff physically interacted with F.S.,[1] one of the students in the class. The parties dispute the exact manner in which she interacted with F.S. and the reason why she did so. But the fact of the interaction is undisputed.

At the end of that lesson, O'Brien returned to the classroom and relieved the Plaintiff. O'Brien noticed that F.S. was crying and asked her why. F.S. motioned to her neck, and then to the door through which Plaintiff had just left. O'Brien saw a red, swollen welt on F.S.'s neck. Another student in the class stated that the Plaintiff had hurt F.S. O'Brien then alerted the school's Assistant Principal, Jennifer Meyer.

Meyer took F.S. out of the classroom and spoke to her in private. Though English is not her first language, F.S. was able to communicate that the Plaintiff had hurt her, and again pointed to her neck. Meyer also noted a welt on F.S.'s neck.

Meyer sent F.S. to the school nurse and set out to investigate the incident. She summoned four students from the class who sat near F.S. She interviewed them individually and recorded the conversations. Though they used different verbs— "pushed," "touched," and "moved"—each of the children confirmed that the Plaintiff had physically interacted with F.S. during the lesson. Meyer then called 911 and reported the incident. She also alerted F.S.'s mother.

Meanwhile, Plaintiff, who was called to Meyer's office from her second period class, consulted the school's union representative. The district union representative soon arrived to further advise her.

Police Officer Troy Burchard and his partner responded to Meyer's 911 call, as did E.M.T. technicians. Burchard spoke to Meyer, who related her conversation with F.S. and the other student witnesses. He also spoke to F.S. directly and saw the red mark on her neck. Finally, Burchard spoke with F.S.'s mother, who stated that she wanted to press charges against Plaintiff.

Officer Burchard arrested Plaintiff for assault in the second degree, in violation of N.Y. Penal Law § 120.05, and endangering the welfare of a child, in violation of N.Y. Penal Law § 260.10. Plaintiff was taken to the 109th Precinct and held until her arraignment, about 24 hours later. She ultimately agreed to an Adjournment in Contemplation of Dismissal, pursuant to N.Y. Crim. Proc. Law § 170.55, which would expire nine months later.

On the same day as Plaintiff's arrest, Meyer contacted the Department of Education's Office of Special Investigations, which initiated its own investigation. That investigation comprised additional interviews of F.S. and the student witnesses, and a review of Meyer's notes. While the district investigation was ongoing and her criminal charges pending, a "problem code" was placed next to Plaintiff's name in the directory of substitute teachers. The code rendered her ineligible to substitute at district schools.

The Office of Special Investigation's case concluded on December 5, 2012 with a determination that F.S.'s complaint was

---

1. In accordance with Fed. R. Civ. P. 5.2, the minor complainant is identified by her initials, only.

"substantiated for poor judgment." (Defs.' Mot. for Summ. J, Ex. D at Def39, ECF No. 43–4.) Plaintiff returned to substitute teaching in January 2013 and filed this case three months later. She brings claims for, *inter alia*, false arrest, abuse of process, failure to supervise, municipal *(Monell)* liability, and violations of due process. On December 1, 2014, Defendants moved for summary judgment.

## DISCUSSION

### A. Legal Standard

Summary judgment is appropriate only where "there is no genuine dispute as to any material fact[.]" Fed. R. Civ. P. 56(a). A moving party is entitled to judgment as a matter of law if the nonmoving party has failed to make a sufficient showing on an essential element of her case for which she has the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, the nonmoving party must offer "concrete evidence from which a reasonable juror could return a verdict in h[er] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

This Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir.2011) (quotation omitted). However, mere "conclusory allegations or denials ... cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir.2010) (citation omitted).

### B. Analysis

#### 1. False Arrest

■ ..Plaintiff's § 1983 claim for false arrest stems from her right to remain free from unjustified seizures. *Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir.2006). Accordingly, probable cause, which justifies a seizure, is a complete defense to that claim. *See Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir.2013). As long as circumstances surrounding the event at issue suggest trustworthiness, probable cause can be established by a crime victim's statement (*see Koester v. Lanfranchi*, 288 Fed.Appx. 764, 766 (2d Cir.2008)), or by innocent bystanders who witnessed the crime (*see Blythe v. City of New York*, 963 F.Supp.2d 158, 182 (E.D.N.Y.2013)). Further, "where there is no dispute as to what facts were relied on to demonstrate probable cause, the existence of probable cause is a question of law for the court." *Walczyk v. Rio*, 496 F.3d 139, 157 (2d Cir.2007).

■ F.S.'s complaint established probable cause for Plaintiff's arrest. F.S. described the incident with Plaintiff consistently in interviews with several different adults, including O'Brien,[2] Meyer,[3] Officer Burchard,[4] the E.M.T.'s,[5] and the district

---

**2.** *See* O'Brien Aff. at ¶¶ 3, 7, 9, ECF No. 43–11 (observing that F.S. was crying, "said 'hurt' and pointed to her neck," and that "another student in the class said the substitute teacher did it").

**3.** *See* interview notes drafted by Jennifer Meyer, ECF No. 49–3 ("F.S.: She hurt me here—points to her neck and back says her neck and back hurt ... motions teacher pinching her neck").

**4.** *See* Burchard Aff. at ¶ 6, ECF No. 43–10 ("I also spoke with F.S., through a translator, who told me that the plaintiff ... grabbed and twisted her neck.").

**5.** *See* Ambulance Care Report at Def442, ECF No. 43–12 (F.S. "states [substitute] pushed her a little then grabbed her neck[.]").

special investigators.[6] Her accusation was corroborated by her classmates' statements (*see Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir.2006) ("[I]nformation provided by 'an identified bystander with no apparent motive to falsify' has 'a peculiar likelihood of accuracy'" in establishing probable cause) (*quoting Caldarola v. Calabrese*, 298 F.3d 156, 163 (2d Cir.2002))). And, she had a visible injury to her neck. *See Blythe*, 963 F.Supp.2d at 182 (probable cause established where a student alleging teacher's assault "complained of 'a little bit of pain,' and the [police] officers observed 'a little bit of redness'").

Plaintiff does not materially dispute any of this. Instead, she criticizes the police for failing to interview the student witnesses or "conduct[ ] investigation into the source of F.S.'s red-mark[.]" (Pl.'s Mem. In Opp'n to Defs.' Mot. for Summ. J. 19, ECF No. 47.) But she "is wrong to suggest that defendants had to . . . explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Koester*, 288 Fed.Appx. at 766 (quotation omitted) (upholding summary judgment on false arrest where the police officer relied on allegations of sexual assault without further investigation). Defendants are thus entitled to summary judgment on the false arrest claim.[7]

### 2. Abuse of Process

■ To succeed on an abuse of process claim, Plaintiff must prove, *inter alia*, that Defendants abused a routine legal process to "obtain a collateral objective that is outside the legitimate ends of the process." *Savino v. City of New York*, 331 F.3d 63,

70 (2d Cir.2003) (quotation omitted). Even viewing facts "in the light most favorable" to her, Plaintiff cannot carry this burden. *Brod*, 653 F.3d at 164 (citation omitted).

■ Plaintiff has submitted no evidence that Defendants acted with a "collateral objective." Her abuse of process claim carries "neither any explicit charge of extortion, blackmail, retribution, or similar extraneous harmful goal," nor "any facts [ ] upon which an inference of such motive on the part of Defendants could reasonably be inferred." *Brandon v. City of New York*, 705 F.Supp.2d 261, 275 (S.D.N.Y. 2010). She accuses the Defendants of using legal process "in a drawn out fashion to prevent her from returning to P.S. 22 or other nearby schools for as long as possible after her arrest." (Pl.'s Mem. In Opp'n to Defs.' Mot. for Summ. J. 25, ECF No. 47.) However, this assertion ignores that Meyer immediately reported the assault and quickly initiated a special investigation. Further, the investigation—including the placement of a problem code by Plaintiff's name—was conducted according to protocol. Plaintiff returned to work a mere ten months after the incident with F.S. Her claim fails as a matter of law. *See Brandon*, 705 F.Supp.2d at 275 (summary judgment on abuse of process was appropriate where plaintiff "allege[d] only conclusorily that Defendants engaged in the prosecution in order to obtain a collateral objective that was outside the legitimate ends of the process").

### 3. Stigma–Plus Defamation

■ Plaintiff's due process claim also lacks merit. She has invoked a "stigma-

---

6. *See* Office of Special Investigations Investigative Report at Def34, ECF No. 49–7 (F.S. "told Investigators . . . that Ms. Peterson–Hagendo[rf] 'moved' her 'back and forth' in addition to 'doing something to [her] neck[,]'" . . . 'shook [her],' and 'touched [her] neck' and her back.").

7. Plaintiff also alleges state law claims including false imprisonment and false arrest against NYPD and the DOE. Those state law claims are duplicative of her claims under § 1983, so they are dismissed, as well.

plus" claim under the Due Process Clause of the Fourteenth Amendment, which requires her to show loss of reputation ("stigma") and deprivation of a "tangible interest" ("plus") without adequate due process. *Segal v. City of New York*, 459 F.3d 207, 213 (2d Cir.2006). However, at-will government employees have only a limited "tangible interest" in their employment. *Id.* at 213. Accordingly, the government may dismiss an at-will employee without a pre-termination hearing and without trespassing on the rights and privileges of due process—as long as the employee is later given "a meaningful opportunity to clear [her] name." *Id.* at 214, 216–17 (for at-will employees, "the availability of an adequate, reasonably prompt, post-termination name-clearing hearing is sufficient to defeat a stigma-plus claim[.]").

As a substitute teacher, Plaintiff was not entitled to a hearing before the problem code was placed next to her name. She did, however, have access to Article 78, which has been deemed a "perfectly adequate postdeprivation remedy[.]" *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 881 (2d Cir. 1996) (collecting cases); *see also Rivera v. Cmty. Sch. Dist. Nine*, 145 F.Supp.2d 302, 308 (S.D.N.Y.2001) (probationary teacher failed to show a due process violation because she could "seek the redress she desire[d]—an opportunity to clear her name—through an Article 78 proceeding"). Plaintiff has submitted no evidence that she pursued an Article 78 proceeding. "Where, as here, Article 78 ... gave a meaningful opportunity to challenge" her ten-month deprivation, Plaintiff "was not deprived of due process simply because [she] failed to avail [herself] of the opportunity." *Hellenic Am. Neighborhood Action Comm.*, 101 F.3d at 881 (quoting *Giglio v. Dunn*, 732 F.2d 1133, 1135 (2d Cir. 1984)). Thus, summary judgment is appropriate.

### 4. Municipal ("Monell") Liability and Failure to Supervise

Summary judgment is also proper on Plaintiff's municipal liability (*Monell*) and failure to supervise claims. Plaintiff may not rely on a respondeat superior theory to hold municipal defendants liable for their employees' actions. *Missel v. Cnty. of Monroe*, 351 Fed.Appx. 543, 545 (2d Cir. 2009). ("Under *Monell*, a municipality may not be held liable under § 1983 solely on a respondeat superior theory[.]"). This is true either through a traditional *Monell* claim or supervisor liability, which is premised on a municipality's quiet acceptance of repeated misconduct, creating a policy through inaction. *See Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir.2007) (comparing failure to supervise with municipal liability under *Monell* and noting that "*Monell's* policy or custom requirement is satisfied where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions").

Plaintiff's municipal liability claims fail as a matter of law. She has failed to show that any municipal policy or custom caused her to suffer a constitutional deprivation. She has also failed to show any pattern of omissions by municipal supervisors that infringed on her constitutional liberties.

### CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted.

SO ORDERED.